DAYTON BAR ASSOCIATION *v.* ELLISON.

[Cite as *Dayton Bar Assn. v. Ellison,* 118 Ohio St.3d 128, 2008-Ohio-1808.]

(No. 2007–1999—Submitted January 9, 2008—Decided April 23, 2008.)

**Per Curiam.**

{¶ 1} Respondent, Kathy Lee Ellison of Dayton, Ohio, Attorney Registration No. 0033808, was admitted to the practice of law in Ohio in 1979. The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for six months, staying the suspension on conditions, based on findings that she failed to diligently pursue two clients' cases and misled one of the clients about the disposition in her case. We agree that respondent committed professional misconduct as found by the board; however, we impose the sanction to which respondent stipulated—a one-year suspension, stayed on conditions to ensure the ethical management of her practice.

{¶ 2} Relator, Dayton Bar Association, charged respondent in a two-count complaint with violations of the Code of Professional Responsibility, including DR 1–102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation), 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law), and 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter). A three-member panel of the board heard the case and accepted the parties' stipulations of fact and misconduct and recommended the stayed six-month suspension. The board adopted the panel's findings of fact, conclusions of law, and recommendation.

## Misconduct

### Count I—The Parker Case

{¶ 3} Ray Allen Parker retained respondent in July 1997 to represent him in a divorce. The parties obtained a divorce decree in December of that year but had not by that time finalized a Qualified Domestic Relations Order ("QDRO") transferring to Parker one-half interest in his ex-wife's 401(k) plan.

{¶ 4} Before filing the QDRO in court, respondent had to obtain the 401(k) plan administrator's approval. The administrator had rejected a proposed QDRO, and respondent had had to revise it. The administrator still resisted, however, advising respondent in September 2000 that a restraining order precluded further negotiation. Respondent persuaded the administrator to resume negotiations, but in November 2001, Parker's ex-wife filed for bankruptcy, which further complicated the situation.

{¶ 5} Respondent and opposing counsel at some point notified the domestic relations court that Parker's ex-wife had rolled her 401(k) into an IRA and that they would soon file a QDRO dividing the proceeds. She never followed through with obtaining the QDRO. Parker eventually obtained his share of the retirement proceeds by hiring another lawyer.

{¶ 6} Respondent explained to the hearing panel that she had spent "hours and hours and hours" on Parker's case but "kind of gave up" because "everything was a problem." By failing to pursue the QDRO on Parker's behalf, respondent violated DR 6–101(A)(3).

### Count II—The Grismer Case

{¶ 7} Christina L. Grismer retained respondent in July 2001 to sue her employer for employment discrimination. In November 2002, after seeking relief before the Ohio Civil Rights Commission, respondent filed Grismer's case in federal court. In June 2004, the defendant-employer moved for summary judgment.

{¶ 8} Respondent prepared and had her client execute an affidavit to oppose the motion for summary judgment. She then transmitted a response to the motion to opposing counsel, but for some reason, she did not also file the response in court. On September 8, 2004, a federal judge granted the employer's motion for summary judgment as unopposed.

{¶ 9} Sometime thereafter, Grismer contacted respondent to check on the status of her claim. Respondent falsely replied that she "didn't know anything." Grismer checked back periodically, but respondent did not tell her of the adverse judgment until March 30, 2005, some six months after the decision. Only when Grismer confronted respondent in her office on May 27, 2005, did respondent

concede that she had "screwed up" and known for months about the summary judgment entry.

{¶ 10} Respondent admitted to the hearing panel that she had misled her client about the federal court's disposition. She explained that she had had her own personal problems at the time, including the end of her own marriage, and did not want to deal with having lost Grismer's case.

{¶ 11} Respondent testified that she had received but did not immediately open an electronic notification of the court's ruling. She thus did not realize for some time that the court had granted summary judgment as unopposed. But even when she realized the problem, respondent did not attempt to file anything to save Grismer's claim.

{¶ 12} Respondent's dishonesty and inaction in the Grismer case violated DR 1–102(A)(4), 1–102(A)(6), and 6–101(A)(3).

Sanction

{¶ 13} A lawyer's violation of DR 1–102(A)(4) ordinarily requires an actual suspension from the practice of law; however, we have imposed a stayed suspension despite the dishonesty where sufficient mitigating circumstances are present. *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 6 and 21. We follow this precedent here but extend the suspension period to one year to provide respondent more time to show that she can manage her practice in accordance with ethical standards. Our decision thus incorporates the sanction proposed by the parties.

{¶ 14} Respondent has been in practice for 27 years, primarily representing domestic relations clients in and around Dayton who can ill afford an attorney. Respondent's practice, in which she handles approximately 100 divorces each year, serves an important purpose in her community. These cases can be complex and time-consuming, yet sometimes her clients do not pay. In fact, Grismer had paid for only some expenses, money that respondent later repaid.

{¶ 15} Respondent does have a public reprimand on her record for a previous instance of neglect, but that sanction is nearly 20 years old. See *Dayton Bar Assn. v. Ellison* (1990), 50 Ohio St.3d 131, 552 N.E.2d 930. According to relator's counsel, she is also respected by fellow practitioners for her commitment to those less fortunate, which promotes public confidence in the legal system. Finally, respondent cooperated completely in the disciplinary process, acknowledging her wrongdoing and expressing concomitant remorse.

{¶ 16} These mitigating factors are relevant in determining an appropriate sanction. We therefore accept the sanction and conditions to which she agreed. Respondent is suspended from the practice of law in Ohio for one year; however, the suspension will be stayed on the condition that respondent serve a one-year

probation pursuant to Gov.Bar R. V(9). During the probation, respondent shall (1) cooperate with an attorney assigned by relator to monitor and make recommendations for the responsible management of her office and practice and (2) attend a continuing legal education course on law office management. If respondent fails to comply with the terms of the stay or probation, the stay will be lifted, and respondent shall serve the entire one-year suspension.

{¶ 17} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

CUPP, J., dissents and would impose a six-month stayed suspension.

----

Hochwalt & Schiff, L.L.C., and Thomas R. Schiff, for relator.

Kathy L. Ellison, pro se.