DISCIPLINARY COUNSEL *v.* KIMMINS.

[Cite as *Disciplinary Counsel v. Kimmins,*

123 Ohio St.3d 207, 2009-Ohio-4943.]

*Attorneys — Misconduct — Advancing financial assistance to a client unrelated to court costs or litigation expenses — Engaging in conduct involving fraud, deceit, dishonesty, or misrepresentation — Conduct adversely reflecting on fitness to practice law — One-year suspension, stayed on conditions.*

(No. 2009-0469 — Submitted April 21, 2009 — Decided September 24, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-042.

_____

**Per Curiam**.

{¶ 1} Respondent, Thomas W. Kimmins, Attorney Registration No. 0024739, with a registration address in Massillon, Ohio, was admitted to the practice of law in Ohio in 1963. The Board of Commissioners on Grievances and Discipline has recommended that we suspend his license to practice law for one year, all stayed on conditions, based on findings that he advanced financial assistance to a client while representing him in pending litigation, retained the client's property without disclosing that fact, misused the client's confidential information, made misrepresentations to the client's family, and failed to maintain complete records and render appropriate accounts to the client regarding the client's property. We agree that respondent committed professional misconduct as found by the board and that a one-year suspension, all stayed on conditions, is the appropriate sanction.

**{¶ 2}** Relator, Disciplinary Counsel, charged respondent with multiple violations of the Disciplinary Rules of the former Code of Professional Responsibility. A panel of the board heard the case, dismissed some of the charges alleged in the complaint, found that respondent had committed professional misconduct, and recommended a one-year suspension, all stayed on conditions. The board adopted the panel's findings and recommendation.

## Misconduct

**{¶ 3}** Respondent represented Joseph Arvine Steiner in a dispute related to his mother's estate after she died in August 2002. For over 40 years, Steiner had lived at a house owned by his mother and had, during that time, stored on the premises automotive and commercial equipment and other items that he intended to repair and sell in order to augment his income after retirement. Inside the house, the roof had leaked and damaged the kitchen, and the plumbing had problems. Steiner also kept boxes of leftover chicken dinners and jars of applesauce in the refrigerator and stored piles of paper, tools, and equipment throughout the house. Steiner admitted that he would not invite people over to his house on account of its deterioration.

**{¶ 4}** In March 2004, Steiner informed respondent that he had decided to retire from his job as a mechanic at Peoples Cartage, a trucking company, and sought advice on his financial situation while he waited for his pension payments to commence. Although Steiner had not requested a loan, he agreed to accept $5,000 from respondent to be deposited in a power-of-attorney account for the purposes of paying bills and covering the expenses of the pending case until his mother's estate closed. Steiner also executed a durable power of attorney appointing respondent his attorney-in-fact. Respondent then opened the power-of-attorney account jointly in his own and Steiner's name, and he paid Steiner's bills out of that account and out of his own attorney trust account.

**{¶ 5}** A week after Steiner executed the power of attorney, he settled the dispute over his mother's estate for $40,000, various bonds, and title to his mother's house, with respondent retaining $12,000 pursuant to their contingent-fee agreement. Steiner had left a large number of tools with his former employer. Respondent called Eugene Hawk, explaining that he had " 'a client here that's got a bum leg' " who had recently retired from Peoples Cartage and asking Hawk to pick up the tools for him. Steiner picked up the phone, identified himself, and said he didn't need any help.

**{¶ 6}** In late March 2004, Steiner and respondent met at a restaurant for breakfast, during which Steiner admitted being depressed over the settlement and over the discord and division it had wrought in his family. Respondent drove Steiner to his house, and after touring it, respondent persuaded Steiner to go with him to a hospital to have his depression and varicose veins evaluated. Steiner voluntarily admitted himself to the hospital, and his doctor diagnosed him with severe depression.

**{¶ 7}** Having viewed the condition of Steiner's property and considering it unfit for human habitation, respondent decided to act. Using the power of attorney, respondent began cleaning up the scrap metal, machines, building supplies, vehicles, and other items on the inside and the outside of the house. Respondent admitted knowing that Steiner would not have approved of liquidating his assets in this manner and had not executed the power of attorney envisioning that respondent would use it to remediate the property. However, respondent claimed that the laws of Steiner's township and Steiner's best interests required a massive cleanup operation, and Steiner's fragile mental health necessitated commencing it without Steiner's knowledge or express consent.

**{¶ 8}** Respondent hired Hawk to sell the items Steiner had collected outside the house. Hawk then began moving items off the property, while respondent and others began sorting through the personal items in the house to

determine what was garbage, what should be moved to a storage unit, and what should be left in the house.

{¶ 9} Meanwhile, respondent informed Steiner's children of their father's hospitalization, and he obtained their consent to continue the cleanup operation by telling them that Steiner's doctor had said that Steiner was a threat to himself and others, that Steiner had financial problems, that social services was involved, that Steiner's property was out of compliance with the township zoning ordinance, and that Steiner would not be able to return home if they did not remedy the problems at the house.

{¶ 10} By April 2, 2004, Steiner asked his friend Lou Pappas to check out his property because of his concern that something unusual was occurring there. Pappas reported that Hawk had begun hauling items off the property and scrapping items that could have been sold for value. Although Steiner now had knowledge that respondent had begun using the power of attorney to clean up his property, he did not protest, revoke the power of attorney, or check himself out of the hospital. Moreover, on the date of his discharge from the hospital, April 5, Steiner visited his property, yet he did not revoke the power of attorney. Steiner explained that he feared that raising objections would have resulted in his being committed to a mental hospital. Nonetheless, he admitted agreeing with the plan to clean up the property in order to sell it.

{¶ 11} That same day, Steiner's son, Joe Steiner Jr., drafted a letter authorizing the cleanup, but he reserved several items from sale and required respondent to maintain an inventory. Steiner then accompanied his son to Georgia, where he was to stay while the cleanup continued. However, after talking to his father, Joe Steiner Jr. became suspicious of respondent's description of Steiner's mental and legal problems.

{¶ 12} Joe Steiner Jr. confirmed that his father's doctor had never stated that Steiner would kill himself or others in three to six months, and he discovered

4

that the property had not been cited by the township for being out of compliance with the zoning ordinance. Joe Steiner Jr. testified that when he confronted respondent about his prior statements, respondent threatened him. When Steiner took the phone and questioned respondent on the decision to give away so much of his property, respondent terminated the relationship.

{¶ 13} After April 7, 2004, respondent distributed the funds he received in the settlement of Steiner's challenge in the estate case, and he prepared two inventories accounting for much of Steiner's property. However, respondent failed to keep an accurate inventory of the property sold or discarded. He admitted that he lacked personal knowledge that all of the household property taken from inside the house either remained on the property or ended up in storage.

{¶ 14} For example, respondent did not account for decorative stone that Hawk delivered to respondent's residence, a few pieces of which respondent's gardener had used in landscaping at respondent's farm. Respondent made no attempt to return the stone, which remained on his property as of the hearing date, and although he testified to his belief that the stone had no value, a stone dealer appraised it at relator's request at a value of $1,260. Also, although the second inventory indicated that a school bus Steiner owned had been returned to the property, that had not happened. Respondent also represented that he had received $400 for scrap collected from the property when in fact he had received $322. Similarly, the inventory indicates that respondent received $3,000 for a white fifth-wheel truck, but Steiner had not been paid for it. Moreover, the inventory does not account for an N-Model truck, a .22 rifle, and copper that Steiner owned. Respondent admitted that it was impossible to keep track of Steiner's possessions, that not all of the property had been returned to Steiner, and that none of the money that had been paid for the items removed from the property had made its way to Steiner.

**{¶ 15}** We accept the board's finding that respondent's $5,000 loan to Steiner violated DR 5-103(B) (a lawyer shall not provide financial assistance to a client in connection with litigation unrelated to court costs or litigation expenses), that his misrepresentations to Steiner's children regarding their father's mental health and whether Steiner's property complied with the township's code violated DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and that his misuse of Steiner's confidential information to his disadvantage to solicit the support of Steiner's children for the cleanup operation, which he knew Steiner would oppose, violated DR 4-101(B)(2) (using a client's confidence to the client's disadvantage) and 1-102(A)(6) (a lawyer shall not engage in any other conduct that adversely reflects upon the lawyer's fitness to practice law). We also accept the board's finding that respondent's retention of the decorative stone violated DR 1-102(A)(4) and that his failure to adequately and honestly account for Steiner's property violated DR 9-102(B)(3) (a lawyer shall maintain complete records of all funds, securities, and other properties of a client coming in the possession of the lawyer which the client is entitled to receive) and 1-102(A)(6).

**{¶ 16}** We agree with the board's conclusion that clear and convincing evidence does not support relator's allegations that respondent violated DR 1-102(A)(6) in his use of the power of attorney, 4-101(B)(1) (prohibiting a lawyer from knowingly revealing a client's confidences or secrets) and 1-102(A)(6) in discussing Steiner's health and financial issues with others, and 9-102(B)(2) (a lawyer shall safeguard a client's property in the lawyer's possession) and 1-102(A)(6) in storing, selling, and bartering Steiner's property. We therefore dismiss those parts of the complaint.

### Sanction

**{¶ 17}** When imposing sanctions for attorney misconduct, we consider all relevant factors, including the duties the lawyer violated, the lawyer's mental

state, and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 18} As aggravating factors, we accept the board's findings that respondent has refused to acknowledge the wrongful nature of his conduct, other than lending his client money, that respondent has failed to make restitution or to help Steiner in retrieving his possessions, and that Steiner was vulnerable and suffered harm. Regarding mitigating factors, the record reflects that the respondent has practiced law for more than 45 years and has no prior disciplinary record. In his efforts to clean up an uninhabitable home and property, respondent acted beyond the scope of his authority; however, the board found that respondent acted in the *absence* of a dishonest or selfish motive and has had what appears to be an exemplary career. At the hearing before the panel, respondent offered evidence of his good character through 40 letters of reference submitted by people from all walks of life, including attorneys, clients, and members of the community, as well as a common pleas court judge, two judges of the family court, and the Stark County Prosecuting Attorney. He also presented character evidence through the testimony of the Honorable David D. Dowd Jr., a United States district court judge, Judge Sheila Farmer of the Fifth District Court of Appeals, and Richard T. Kettler, retired and formerly of the Massillon Municipal Court, all of whom described respondent as having a reputation for honesty,

integrity, and good character and as being deserving of the public trust. In addition, the board noted that respondent has fully cooperated with the investigative process, has made full disclosure to the appropriate authorities, and has suffered embarrassment from the accusations of misconduct portrayed in the local media.

{¶ 19} The primary purpose of the disciplinary process is to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship and to allow us to ascertain the lawyer's fitness to practice law. *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10. While respondent's unilateral decision to clean up and dispose of Steiner's property against his client's known wishes, his misrepresentations to Steiner's children, which were designed to gain their agreement to his plan of action, his retention of his client's property, his failure to keep an accurate and complete inventory and to account for Steiner's personal property during the cleanup, and his failure to acknowledge the wrongfulness of his actions demonstrate that a suspension of his license to practice law for one year is warranted, there is no question that respondent acted in what he perceived to be Steiner's best interest.

{¶ 20} In *Cleveland Metro. Bar Assn. v. Podor*, 121 Ohio St.3d 131, 2009-Ohio-358, 902 N.E.2d 488, we imposed a one-year suspension, all stayed on conditions, on an attorney who improperly advanced financial assistance to a client during the course of a representation. Id. at ¶ 13. In *Disciplinary Counsel v. Croushore*, 108 Ohio St.3d 156, 2006-Ohio-412, 841 N.E.2d 781, we imposed a one-year suspension, conditionally stayed, for an attorney's failure to keep proper records and render a proper accounting of client funds in his possession, as well as his failure to keep those funds in an attorney trust account. Id. at ¶ 9. In *Columbus Bar Assn. v. Halliburton-Cohen* (2002), 94 Ohio St.3d 217, 217, 761 N.E.2d 1040, we suspended an attorney for one year, with a conditional stay, for

conduct adversely reflecting on her fitness to practice law, failure to keep proper records, and failure to deliver property to which her client was entitled.

{¶ 21} Although "[d]ishonest conduct on the part of an attorney generally warrants an actual suspension from the practice of law," *Disciplinary Counsel v. Rooney*, 110 Ohio St.3d 349, 2006-Ohio-4576, 853 N.E.2d 663, ¶ 12, this court has previously explained that the type of mitigating evidence introduced in this case can justify imposing a lesser sanction. See *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 14 (holding that mitigating evidence demonstrating that Agopian had no prior disciplinary record, had fully cooperated with the disciplinary process, had accepted responsibility for his conduct, and had provided over 40 character references counseled against imposing a greater sanction). We therefore accept the board's recommendation that respondent's one-year suspension be stayed on conditions.

{¶ 22} Based on respondent's conduct and our precedent, respondent is hereby suspended from the practice of law in the state of Ohio for one year, all stayed. As conditions of staying the suspension, respondent is ordered to return forthwith at his cost all of Steiner's property in his possession, including the decorative stone, pay the costs associated with the retrieval of other items not presently on Steiner's property, and commit no further disciplinary violations.

{¶ 23} Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, and CUPP, JJ., concur.

MOYER, C.J., and O'CONNOR and LANZINGER, JJ., dissent.

————————————

**MOYER, C.J., dissenting.**

{¶ 24} I respectfully dissent from the majority decision with respect to the sanction imposed on respondent. Respondent's conduct warrants an actual suspension from the practice of law.

**{¶ 25}** "Dishonest conduct on the part of an attorney generally warrants an actual suspension from the practice of law." *Disciplinary Counsel v. Rooney*, 110 Ohio St.3d 349, 2006-Ohio-4576, 853 N.E.2d 663, ¶ 12. Respondent made misrepresentations to his client regarding the client's own property and to his client's children regarding the client's mental health. Respondent even threatened the client's son when the son confronted him. This conduct is in clear violation of DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).

**{¶ 26}** Respondent additionally violated four other Disciplinary Rules: DR 1-102(A)(6), 4-101(B)(2), 5-103(B), and 9-102(B)(3). He sold and otherwise disposed of his client's personal belongings without the client's knowledge or consent, while the client was in the hospital; he disposed of the client's assets under the authority of a power of attorney executed by the client but admitted that he knew the client would disapprove of this; he lied to the client's children in order to gain their consent to his actions; he drafted an inventory of the client's property that contained several inaccuracies and failed to account for certain items; he never gave any money received from the sale of the client's property to the client; and he improperly lent money to his client to cover living expenses.

**{¶ 27}** The cases cited by the majority to support a stayed suspension did not include the totality of the conduct engaged in by respondent, and only *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, involved a violation of DR 1-102(A)(4). Even *Agopian* did not appear to involve an act of dishonesty, but rather "sloppy record keeping" that resulted in the attorney's submitting inaccurate fee bills. Id. at ¶ 11. The sum total of respondent's actions, including outright dishonesty, should be punished with an actual suspension for one year, with no time stayed.

O'CONNOR and LANZINGER, JJ., concur in the foregoing opinion.

_____

**O'CONNOR, J., dissenting.**

{¶ 28} I disagree with the majority's decision to adhere to the recommendation of the Board of Commissioners on Grievances and Discipline and impose a one-year suspension, all stayed. Based upon respondent's conduct and our precedent, I would impose an actual one-year suspension. I therefore dissent.

{¶ 29} As noted by the majority, this court must weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. When all of the relevant factors for determining what sanction to impose against respondent are weighed, it is clear that an actual suspension is necessary.

{¶ 30} I agree with the board's findings with regard to the mitigating and aggravating factors in this case. However, I disagree with the majority's treatment of these factors. As mitigating factors, I agree with the board's findings that respondent lacked a prior disciplinary record, did not act out of a dishonest or selfish motive, cooperated with the disciplinary process, proved his good character through references, and has suffered embarrassment from the accusations of misconduct portrayed in the local media. As aggravating factors, I agree with the board's findings that respondent has refused to acknowledge the wrongful nature of his conduct, other than the lending of money to his client, that respondent has failed to make restitution or to help Steiner in retrieving his possessions, and that Steiner was vulnerable and suffered harm.

{¶ 31} The majority recognizes that the primary purpose of the disciplinary process is to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship and to allow us to ascertain the lawyer's fitness to practice law. *Disciplinary Counsel v. Agopian*,

112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10. Yet the majority does not fulfill that purpose because it stays respondent's suspension. The majority simply excuses respondent's conduct by holding that he acted in what he perceived to be Steiner's best interest.

{¶ 32} Although respondent may have acted in what he perceived to be Steiner's best interests, his unilateral decision to clean up and dispose of Steiner's property against his client's known wishes, his misrepresentations to Steiner's children (which were designed to gain their agreement to his plan of action), his retention of his client's property, his failure to keep an accurate and complete inventory and to account for Steiner's personal property during the cleanup, and his failure to acknowledge the wrongfulness of his actions undermine the trust and confidence essential to the attorney-client relationship. All of these factors demonstrate that an actual suspension of his license to practice law for one year is warranted.

{¶ 33} While respondent may not have acted with a dishonest motive, he engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of DR 1-102(A)(4). "[D]ishonest conduct on the part of an attorney generally warrants an actual suspension from the practice of law." *Disciplinary Counsel v. Rooney*, 110 Ohio St.3d 349, 2006-Ohio-4576, 853 N.E.2d 663, ¶ 12, citing *Disciplinary Counsel v. Beeler,* 105 Ohio St.3d 188, 2005-Ohio-1143, 824 N.E.2d 78, ¶ 44, and *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 191, 658 N.E.2d 237; see also *Disciplinary Counsel v. Stollings*, 111 Ohio St.3d 155, 2006-Ohio-5345, 855 N.E.2d 479, ¶ 13 ("A violation of DR 1-102(A)(4) ordinarily calls for the actual suspension of an attorney's license"). The majority acknowledges that respondent's conduct was dishonest and in violation of DR 1-102(A)(4), yet inexplicably declines to impose an actual suspension. Because of the dishonest nature of respondent's misconduct, this court's precedent requires an actual suspension.

**{¶ 34}** Thus, contrary to the majority holding, I would hold that based on respondent's conduct and our precedent, respondent's misconduct warrants an actual suspension. I therefore respectfully dissent.

MOYER, C.J., and LANZINGER, J., concur in the foregoing opinion.

_____

Jonathan Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator.

Christensen, Christensen, Donchatz, Kettlewell & Owens, Charles J. Kettlewell, and Kenneth R. Donchatz, for respondent.

_____