[Cite as *Disciplinary Counsel v. Pfundstein*, 128 Ohio St.3d 61, 2010-Ohio-6150.]

DISCIPLINARY COUNSEL *v.* PFUNDSTEIN.

[Cite as *Disciplinary Counsel v. Pfundstein*,

**128 Ohio St.3d 61, 2010-Ohio-6150.]**

*Attorneys — Misconduct — Multiple violations of the Rules of Professional Conduct — Deference to panel's credibility determinations — Stayed one-year license suspension.*

(No. 2010-1243 — Submitted October 12, 2010 — Decided December 21, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-076.

_____

**Per Curiam**.

{¶ 1} Respondent, Joseph Anthony Pfundstein of Pepper Pike, Ohio, Attorney Registration No. 0056167, was admitted to the practice of law in Ohio in 1991. The charges here stem from respondent's representation of Phillip Einhorn in two separate matters: collection of a legal-malpractice judgment and litigation of an employment-discrimination claim against Einhorn's former employer. Relator, Disciplinary Counsel, charged respondent with multiple violations of the Rules of Professional Conduct, in each matter alleging that respondent had misrepresented the status of the litigation to his client, had failed to act with reasonable diligence and promptness in representing his client, had failed to keep his client reasonably informed of the status of the case, had failed to respond promptly to his client's reasonable requests for information, and had engaged in conduct prejudicial to the administration of justice and adversely reflecting on his fitness to practice law.

{¶ 2} The parties stipulated that respondent's conduct violated Prof.Cond.R. 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with

reasonable requests for information from the client), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects upon the lawyer's fitness to practice law), but disputed whether that conduct also violated 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of legal matters), and 8.4(d) (prohibiting conduct that is prejudicial to the administration of justice).

**{¶ 3}** Based on the submitted stipulations and other evidence, a panel of board members found clear and convincing evidence that respondent had violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), 8.4(c), and 8.4(h), concluded that insufficient evidence supported the allegations that respondent had violated 8.4(d), and recommended that respondent be suspended from the practice of law for 12 months, all stayed on conditions.

**{¶ 4}** The Board of Commissioners on Grievances and Discipline adopted the panel's findings of fact, conclusions of law, and recommended sanction. Relator agrees with the board's recommendation of a 12-month suspension but urges that only six months of that suspension be stayed on conditions.

**{¶ 5}** We overrule relator's objections, adopt the board's findings of fact and conclusions of law, and accept its recommendation that we suspend respondent from the practice of law for one year, with the entire suspension stayed on the conditions that respondent (1) comply with his Ohio Lawyers Assistance Program ("OLAP") contract, (2) accept the treatment recommended by OLAP and his psychologist during the period of suspension, (3) remain on probation — monitored by relator — during the term of his three-year OLAP contract, and (4) pay the costs of the disciplinary proceedings.

**Misconduct**

*Count I — Legal-malpractice judgment collection*

**{¶ 6}** In 1998, Phillip Einhorn hired respondent to represent him in a legal-malpractice claim. In April 2001, respondent obtained a $3,906.52 judgment against the attorney in favor of Einhorn. Respondent then agreed to pursue collection of the judgment, but by 2007 had done little to collect on it, and it had not been satisfied.

**{¶ 7}** Einhorn made multiple telephone and e-mail requests to respondent for the status of the collection effort, but respondent failed to timely respond. Further, he falsely advised Einhorn in July 2007 that he "was waiting to get [the attorney] into court" and that he had "been waiting on a court date to finish [his] update." In August 2007, he misrepresented that he had been "waiting [on the] Garfield [Heights Municipal] Court [for] a date for a show cause motion that should be coming in [about] a month," and in January 2008, he falsely advised that he "was waiting for a Show Cause date for [the attorney's] failure to appear at a recent hearing." In fact, respondent had not been involved in any litigation involving the attorney at the time of these statements.

**{¶ 8}** In addition, although respondent had advised Einhorn that he "found out where [the attorney] works" and was "trying to garnish her wages," in reality, respondent had done neither. In fact, the attorney has been indefinitely suspended from the practice of law since 2002. Einhorn finally terminated the representation in August 2008.

**{¶ 9}** We accept the board's findings that respondent violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), 8.4(c), and 8.4(h). We also agree with the board's conclusion that clear and convincing evidence does not support the allegations that respondent violated Prof.Cond.R. 8.4(d) with regard to this conduct, and we therefore dismiss that part of the complaint.

*Count II — The employment-discrimination claim*

**{¶ 10}** In late 1999 or early 2000, Einhorn also hired respondent to represent him in an employment-discrimination claim against his former employer. Respondent filed a complaint in May 2000, but Einhorn subsequently failed to cooperate in discovery, and as a result, the trial court ordered him to respond to discovery or face sanctions, including dismissal with prejudice. Because Einhorn did not provide the requested documents, respondent voluntarily dismissed the case in February 2001 to preserve the claim. After dismissing the lawsuit, however, respondent did not perform any other legal work on this matter.

**{¶ 11}** Nonetheless, in 2007 and 2008, respondent misrepresented the status of the case, suggesting that the claim remained pending. In an August 14, 2007 e-mail, for example, respondent advised Einhorn that the litigation remained "kind of in a holding pattern[,] nothing reall[y] going on but should be picking up in a couple of weeks. By any chance are you coming in to Cleveland in the event of depositions or anything like this[?]" When Einhorn inquired, "[W]hat type of depositions are we talking about and for what," respondent falsely represented that he was "trying to figure out what kind of depo[sition] they want" and suggested that a teleconference might be possible. And when Einhorn sought to confirm that his deposition would be held in Cleveland on September 24, 2007, respondent lied, writing that he could not confirm the date because he and the attorney for the former employer both had other commitments that day. Einhorn requested an update on the litigation on November 28, 2007, but respondent did not provide information until January 2, 2008, and only then to misrepresent that he had been "trying to figure out a way to get [the client's] depo[sition] without [his] having to come to town." Respondent also sent an e-mail on May 25, 2008, falsely stating that he had already mailed the update requested by Einhorn and that he would send a second copy.

**{¶ 12}** At the hearing before the panel, respondent admitted that no legal action had been pending and no depositions had been planned, and he testified

4

that he had sent the false e-mails to keep Einhorn from filing a grievance against him and to "buy [himself] time" to figure out how to deal with the situation. Nonetheless, Einhorn terminated respondent in August 2008.

{¶ 13} We accept the board's findings that respondent violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), 8.4(c), and 8.4(h). We also agree with the board's conclusion that clear and convincing evidence does not support the allegations that respondent violated Prof.Cond.R. 8.4(d) with regard to this conduct, and we therefore dismiss that part of the complaint.

**Sanction**

{¶ 14} When imposing sanctions for attorney misconduct, we consider a number of factors, including the duties the lawyer violated, the lawyer's mental state, and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making our determination, we weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

*Aggravating Factors*

{¶ 15} In aggravation, the board found that respondent had engaged in a pattern of misconduct and had committed multiple offenses.

*Mitigating Factors*

{¶ 16} In mitigation, the board found that respondent had no prior disciplinary record, displayed a cooperative attitude and remorse during the disciplinary proceedings, and had submitted over 20 letters attesting to his good

character and reputation as well as to his community and legal service spanning his 18 years of practice. BCGD Proc.Reg. 10(B)(2)(a) and (e). The board noted that Bedford Municipal Court Judge Brian J. Melling, who employs respondent as a part-time magistrate, testified to respondent's competence and good character and that Paul A. Caimi, the associate director of OLAP and respondent's monitor, testified that respondent had been complying with his three-year OLAP contract and poses no threat to the public.

{¶ 17} The board further found that relator did not show that respondent's misconduct had harmed Einhorn, and it also found that respondent proved that he suffers from a mental disability within the meaning of BCGD Proc.Reg. 10(B)(2)(g). Relying on the testimony of respondent's psychologist, Dr. Roger Neil Hess, the board concluded that respondent had been diagnosed with dysthymia, which is a form of depression, that this mental disability contributed to cause the misconduct, that respondent had undergone a sustained period of successful treatment, and that he could return to competent, ethical professional practice.

{¶ 18} Relator objects to the board's conclusions, contends that the evidence does not support the board's decision to consider respondent's mental disability mitigating, and attacks the credibility of Dr. Hess's determination that respondent's dysthymia contributed to his dishonesty. In particular, relator notes that the Diagnostic and Statistical Manual of Mental Disorder ("DSMMD") does not indicate that dysthymia causes dishonesty. Relator further asserts that Dr. Hess's testimony reveals a lack of knowledge of the facts of respondent's misconduct, emphasizing that Dr. Hess testified that the misconduct had taken place in 2001 and initially stated on cross-examination that there were only two instances of dishonesty.

{¶ 19} We explained in *Disciplinary Counsel v. Heiland,* 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, ¶ 39, that "[w]e will defer to a panel's

credibility determination in our independent review of discipline cases unless the record weighs heavily against those determinations."

{¶ 20} While Dr. Hess admitted that the DSMMD does not indicate that dysthymia causes dishonesty, he testified that other literature as well as his education, experience, and contact with respondent supported his professional opinion that dysthymia could cause a person to be dishonest when he or she has difficulty dealing with people, and he opined that respondent's dysthymia contributed to cause the misconduct that occurred in this case. In addition, the board noted that relator produced no evidence to rebut Dr. Hess's opinion that respondent's dysthymia contributed to respondent's dishonesty.

{¶ 21} Further, Dr. Hess testified that he understood that respondent had "informed Mr. Einhorn that [respondent] had taken certain actions * * * and that those were not true statements" and that there may have been "more than just two times that [respondent] was dishonest about those two different legal matters." Dr. Hess's confusion over the date of the misconduct does not show his ignorance of the history of the misconduct at issue. He testified that respondent had been referred to him by OLAP and had been open and candid during their frequent therapy sessions.

{¶ 22} Relator's arguments that the board erred in relying on Caimi's testimony that respondent's mental disorder had contributed to his misconduct and its assertions that respondent's "dishonesty is not consistent with what common sense tells us a person * * * acting in a cloud of depression would be able to do" and that the supposed depression is "inconsistent with his abilities to function normally and successfully in *all* other areas of his life at the same time" similarly attack the credibility of the evidence. (Emphasis sic.) However, relator failed to object to Caimi's testimony and points to no evidence in the record contradicting Dr. Hess's statement that respondent's dysthymia could manifest itself in some contexts but not in others.

{¶ 23} Accordingly, relator has not shown that the record weighs heavily against the panel's credibility determinations, and we accept the board's findings regarding the aggravating and mitigating factors in this case.

{¶ 24} The parties agree that a suspension from the practice of law for one year, stayed on conditions, is the appropriate sanction in this case, but relator urges in its objections that an actual suspension is necessary based on respondent's pattern of misconduct involving dishonesty.

{¶ 25} While relator is correct that "[d]ishonest conduct on the part of an attorney generally warrants an actual suspension from the practice of law," *Disciplinary Counsel v. Rooney,* 110 Ohio St.3d 349, 2006-Ohio-4576, 853 N.E.2d 663, ¶ 12, we have explained that the type of mitigating evidence introduced in this case can justify imposing a lesser sanction.

{¶ 26} In *Disciplinary Counsel v. Kimmins*, 123 Ohio St.3d 207, 2009-Ohio-4943, 915 N.E.2d 330, we determined that mitigating evidence that the attorney had no prior disciplinary record, had proven his good character and reputation, had acted without a selfish motive, and had fully cooperated with the disciplinary process warranted staying the one-year suspension imposed, notwithstanding the attorney's dishonesty, misuse of the client's confidential information, and failure to protect the client's property. Id. at ¶ 18, 22.

{¶ 27} In *Dayton Bar Assn. v. Ellison*, 118 Ohio St.3d 128, 2008-Ohio-1808, 886 N.E.2d 836, the attorney's negligence resulted in the dismissal of the client's employment-discrimination claim, and when the client contacted the attorney to check on the status of her claim, the attorney falsely stated that she did not know anything and failed to inform the client of the court's action until more than six months after the claim had been dismissed. Id. at ¶ 8-9. Noting that "we have imposed a stayed suspension despite the dishonesty where sufficient mitigating circumstances are present," id. at ¶ 13, we imposed a one-year suspension, stayed on conditions, because the attorney provided an important

8

service to the community, had practiced for 27 years with only a 20-year-old public reprimand on her disciplinary record, had earned the respect of her fellow practitioners, had cooperated fully in the disciplinary process, and had acknowledged her wrongdoing and shown remorse. Id. at ¶ 14-16.

{¶ 28} Similarly, in *Disciplinary Counsel v. Fumich*, 116 Ohio St.3d 257, 2007-Ohio-6040, 878 N.E.2d 6, the attorney filed a medical-malpractice claim on behalf of the estate of the victim, but failed to comply with the trial court's case-management order or to oppose the defendant's motion for summary judgment, resulting in the dismissal of the complaint. Two years later, after a client inquired about the status of the case, the attorney claimed to be negotiating a settlement for the medical-malpractice claim without revealing that that claim had been dismissed. The attorney then deposited his personal funds into his trust account and wrote the client a check for $16,000. Notwithstanding this dishonesty, we determined that mitigating evidence that the attorney had no prior disciplinary record, cooperated fully in the disciplinary process, accepted responsibility for his wrongful conduct, submitted letters attesting to his reputation, professionalism, and competence, and made restitution to the client weighed in favor of a one-year suspension, conditionally stayed. Id. at ¶ 11, 18.

{¶ 29} We have explained that " 'in determining the appropriate length of the suspension and any attendant conditions, we must recognize that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public.' " *Fumich* at ¶ 17, quoting *Disciplinary Counsel v. O'Neill,* 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53. That purpose is served by suspending respondent from the practice of law for one year, with the entire suspension stayed on conditions. Relator did not show that Einhorn suffered any harm, while respondent has no prior disciplinary record, cooperated fully in the investigation of his misconduct, acknowledged his wrongdoing, and demonstrated his good character. Further, the evidence establishes that respondent's mental

disability contributed to cause his misconduct and that continued successful treatment and monitoring pursuant to his three-year OLAP contract will allow him to practice law without posing a threat to the public.

{¶ 30} Accordingly, based on respondent's conduct and our precedent, respondent is hereby suspended from the practice of law in the state of Ohio for one year, with the entire suspension stayed on the conditions that respondent (1) comply with his OLAP contract, (2) accept the treatment recommended by OLAP and his psychologist, (3) serve a period of probation pursuant to Gov.Bar R. V(9) — monitored by relator — during the term of his three-year OLAP contract, and (4) pay the costs of disciplinary proceedings. If respondent fails to comply with the conditions of the stay, the stay will be lifted, and respondent will serve the entire one-year suspension.

{¶ 31} Costs are taxed to respondent.

Judgment accordingly.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Senior Assistant Disciplinary Counsel, for relator.

Koblentz & Penvose, L.L.C., Richard S. Koblentz, and Bryan L. Penvose, for respondent.

_____