**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Lorain Cty. Bar Assn. v. Haynes*, **Slip Opinion No. 2020-Ohio-1570.]**

<u>NOTICE</u>

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-1570

LORAIN COUNTY BAR ASSOCIATION *v.* HAYNES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lorain Cty. Bar Assn. v. Haynes*, Slip Opinion No. 2020-Ohio-1570.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Six-month suspension, fully stayed on condition.*

(No. 2019-1721—Submitted January 29, 2020—Decided April 23, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-001.

_____

**Per Curiam.**

{¶ 1} Respondent, John Stanley Haynes, of Elyria, Ohio, Attorney Registration No. 0005772, was admitted to the practice of law in Ohio in 1968. On February 23, 2000, we publicly reprimanded Haynes for neglecting a client's legal matter. *Lorain Cty. Bar Assn. v. Haynes*, 88 Ohio St.3d 164, 724 N.E.2d 410 (2000).

{¶ 2} In a January 18, 2019 complaint, relator, Lorain County Bar Association, alleged that Haynes failed to act with reasonable diligence and promptness in his representation of a single client, that he failed to keep the client reasonably informed about the status of her case, and that he failed to comply with her reasonable requests for information about her case. The parties submitted stipulations of fact, misconduct, aggravating and mitigating factors, and 70 stipulated exhibits. They also jointly recommended that we publicly reprimand Haynes for his misconduct.

{¶ 3} Based on the parties' stipulations and the evidence adduced at Haynes's disciplinary hearing, a panel of the Board of Professional Conduct found that Haynes had engaged in the charged misconduct and recommended that he be suspended from the practice of law for six months, all stayed on the condition that he engage in no further misconduct. The board adopted the panel's findings and recommendation and no objections have been filed.

**Facts and Misconduct**

{¶ 4} In December 2008, Constance M. Olic retained Haynes to represent her in a divorce proceeding. She paid him an initial retainer of $2,500, plus an additional $300 for a filing fee. On September 9, 2010, the domestic-relations court issued a decree granting Olic a divorce. As part of that decree, Olic was awarded an interest in Mr. Olic's Ford-UAW retirement plan, and Haynes received an additional $5,000 fee from the division of the Olics' property.

{¶ 5} In October 2010, Mr. Olic's counsel submitted a qualified domestic relations order ("QDRO") to the Ford Motor Company to effectuate the transfer of Olic's marital share of Mr. Olic's retirement benefits to her. Ford rejected that QDRO in February 2011. Mr. Olic's counsel submitted a second QDRO to Haynes for his review and approval in April 2011.

{¶ 6} During his disciplinary hearing, Haynes testified that he had no written evidence to confirm that he had approved the second QDRO, that opposing

counsel had sent it to Ford, or that Ford had received it. Although Haynes initially suggested that he had relied on opposing counsel to send the document to Ford, he ultimately conceded that it had been his responsibility to send the document to Ford. Yet, he did nothing to follow up on the status of the second QDRO from April 2011 until April 2014, when Olic paid $450 to retain QDRO Group (a company in Medina, Ohio that specializes in the drafting of QDROs) to prepare a QDRO that would meet with Ford's approval.

{¶ 7} Haynes's associate submitted third and fourth revised QDROs (which had been prepared by QDRO Group) to Ford in September 2014 and January 2015, but Ford rejected them. QDRO Group prepared and submitted a fifth QDRO to Haynes's associate in March 2015. There is no evidence, however, that the fifth QDRO was submitted to Ford at that time.

{¶ 8} Although Olic telephoned Haynes to inquire about the status of the QDRO on numerous occasions beginning in March 2015, she did not speak with him until April 18, 2017. At that time, he told her that he would refile the document on or before April 21, 2017, but he did not follow through on his promise. Because Olic was unable to reach Haynes by telephone for several more months after the April 18, 2017 telephone call, Olic filed a grievance against him in August 2017.

{¶ 9} After obtaining Olic's consent to complete the filing of the QDRO while her grievance was pending, Haynes paid QDRO Group an additional $400 to submit the QDRO to Ford. In October 2017—more than two and one-half years after the fifth QDRO was submitted to Haynes's office for approval—QDRO Group submitted it to Ford. Ford rejected the fifth QDRO on November 16, 2017, and five days later, QDRO Group submitted a sixth QDRO to Haynes.

{¶ 10} In response to relator's February 1, 2018 inquiry regarding the status of Olic's case, Haynes obtained court approval of the sixth QDRO and submitted it to Ford. Ford finally approved the QDRO in March 2018 and determined that Olic was entitled to receive a monthly benefit of $402.92 beginning in April 2018.

Haynes stipulated that but for his failure to obtain timely approval of the QDRO, Olic's benefits would have commenced approximately 82 months earlier following the death of her former husband in May 2011.

{¶ 11} The board found that Haynes had violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) by failing to take any action to further Olic's interests from March 2015 to October 2017 and failing to complete the QDRO filing in a timely manner. The board also found that Haynes had violated Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter) and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from a client) based on his admission that he had not provided Olic a written report regarding the status of his many attempts to obtain Ford's approval of the QDRO and his failure to respond to Olic's numerous telephone calls. We adopt these findings of misconduct.

**Sanction**

{¶ 12} When recommending the sanction to be imposed for attorney misconduct, the board considers all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 13} As for aggravating factors, the parties stipulated that Haynes had previously been disciplined for neglecting an entrusted legal matter. The board additionally found that he had caused economic harm to Olic. *See* Gov.Bar R. V(13)(B)(1) and (8).

{¶ 14} As for mitigating factors, the parties stipulated that Haynes had not acted with a dishonest or selfish motive, had made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, made full restitution to Olic, submitted evidence of his good character and reputation, and offered evidence and testimony regarding several medical disorders

that contributed to his neglect of Olic's case. *See* Gov.Bar R. V(13)(C)(2), (3), (4), and (5). The board accepted those stipulated mitigating factors but emphasized that Haynes had made restitution to Olic only after she retained counsel and filed a malpractice action against him. Even then, the board noted that Haynes had paid only Olic's attorney fees of $11,013.14, while his professional-liability insurer had paid her $33,039.44 relating to the 82-month delay in the commencement of her benefits.

{¶ 15} In determining the appropriate sanction for Haynes's misconduct, the board considered two cases cited by the parties in support of their joint recommendation of a public reprimand. In *Medina Cty. Bar Assn. v. Shirer*, 143 Ohio St.3d 415, 2015-Ohio-3289, 38 N.E.3d 886, we publicly reprimanded an attorney who, like Haynes, had failed to timely file a QDRO on behalf of a client. In *Lorain Cty. Bar Assn. v. Nelson*, 144 Ohio St.3d 414, 2015-Ohio-4337, 44 N.E.3d 268, we publicly reprimanded an attorney who had neglected a single client matter and failed to reasonably communicate with the affected client. The board found that a greater sanction was warranted in this case, however, because unlike the attorneys in *Shirer* and *Nelson*, Haynes has been previously disciplined for neglecting another client's legal matter.

{¶ 16} The board also considered our decision in *Dayton Bar Assn. v. Ellison*, 118 Ohio St.3d 128, 2008-Ohio-1808, 88 N.E.2d 836. In *Ellison*, we imposed a one-year conditionally stayed suspension on an attorney who had a prior disciplinary record, who had failed to obtain a QDRO on behalf of a domestic-relations client, and who had misled another client about the status of her case for approximately six months after receiving notice that the client had received an adverse judgment. Recognizing that Haynes had not engaged in dishonest conduct as the attorney in *Ellison* had, the board concluded that Haynes's conduct warranted a lesser sanction. It therefore recommends that we suspend him from the practice

of law for six months, fully stayed on the condition that he engage in no further misconduct.

{¶ 17} Having independently reviewed the record and the sanctions imposed for comparable misconduct, we agree that a six-month conditionally stayed suspension is the appropriate sanction in this case.

{¶ 18} Accordingly, John Stanley Haynes is suspended from the practice of law in Ohio for six months, with the entire suspension stayed on the condition that he engage in no further misconduct. If Haynes fails to comply with the condition of the stay, the stay will be lifted and he will serve the entire six-month suspension. Costs are taxed to Haynes.

Judgment accordingly.

KENNEDY, DEWINE, DONNELLY, and STEWART, JJ., concur.

FISCHER, J., dissents, with an opinion joined by O'CONNOR, C.J., and FRENCH, J.

_____

**FISCHER, J., dissenting.**

{¶ 19} Because I do not think that the restitution paid by respondent, John Stanley Haynes, constituted a good-faith effort to rectify the consequences of his misconduct, I do not think that it should be considered as a mitigating factor, and thus, I respectfully dissent.

{¶ 20} Haynes violated several of the Rules of Professional Conduct during his representation of Constance M. Olic, including failing to act with reasonable diligence, failing to keep Olic reasonably informed, and failing to comply, as soon as practicable, with her reasonable requests for information. *See* Prof.Cond.R. 1.3 and 1.4(a)(3) and (4).

{¶ 21} As one aggravating factor, the board independently found that Haynes's misconduct had caused Olic economic harm. *See* Gov.Bar R.V(13)(B)(8). Among the mitigating factors found by the board was the stipulated

finding that Haynes had made full restitution to Olic by paying her $33,039.44 for her economic loss and $11,013.14 for her incurred legal fees. *See* Gov.Bar R. V(13)(C)(3).

{¶ 22} But additional facts identified by the board to support its observation that the harm had been "ameliorated * * * but not eliminated" contradict its conclusion that Olic's economic loss was fully recognized. The board and the majority opinion both note that Haynes made restitution to Olic only *after* she retained counsel and filed a malpractice action against him. Even then, Haynes personally paid only Olic's attorney fees, while his professional-liability insurer paid the $33,039.44 settlement amount representing 82 months of delayed benefits payments. Moreover, the majority opinion does not acknowledge that Olic was entitled to an additional eight months' worth of benefits—totaling $3,223.36—that were never paid to her nor that as a result of Haynes's misconduct, she struggled to make ends meet by "rolling change and selling [her] jewelry to pay [her] bills." When all these facts are considered together, it is difficult to see how Haynes's payment to Olic constituted a full or good-faith effort to make restitution.

{¶ 23} In *Disciplinary Counsel v. Peck*, 150 Ohio St.3d 130, 2017-Ohio-2961, 79 N.E.3d 545, ¶ 6, the attorney's failure to respond to a second amended complaint filed against his client resulted in a $25,927.56 default judgment against the client. Despite mitigating factors including the attorney's lack of prior disciplinary history, absence of a dishonest or selfish motive, and cooperative attitude toward the disciplinary proceedings, *id.* at ¶ 13, the sole aggravating factor—that the attorney had caused his client significant financial harm, including garnishments of the client's bank accounts and a lien on the client's real property—led us to modify the board's recommendation of a six-month suspension stayed on the condition of no further misconduct, *id.* at ¶ 13, 20. Instead, we conditioned the stay of the six-month suspension not only on the attorney's good behavior but also

on the requirement that he make full restitution of $25,927.56, plus interest, to his client. *Id.* at ¶ 21.

{¶ 24} Like the attorney in *Peck*, Haynes caused his client significant financial harm. This court should thus follow *Peck* and condition its stay of Haynes's suspension upon his full payment of restitution to Olic.

{¶ 25} Unlike the attorney in *Peck*, however, this is not the first time that Haynes has been disciplined by this court. *See Lorain Cty. Bar Assn. v. Haynes*, 88 Ohio St.3d 164, 724 N.E.2d 410 (2000). This court has recognized time and again that " 'the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public.' " *Disciplinary Counsel v. Schuman*, 152 Ohio St.3d 47, 2017-Ohio-8800, 92 N.E.3d 850, ¶ 17, quoting *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53. To give effect to this purpose, we should impose an additional sanction requiring Haynes to serve a general six-month term of monitored probation consistent with Gov.Bar R. V(21). *See Disciplinary Counsel v. Halligan*, 157 Ohio St.3d 447, 2019-Ohio-3748, 137 N.E.3d 1141, ¶ 36 (Fischer, J., concurring).

{¶ 26} For all the foregoing reasons, I would impose a six-month suspension stayed on the conditions that Haynes commit no further misconduct and that he make additional restitution to Olic in the amount of $3,223.36. I would also require that Haynes serve a six-month period of monitored probation.

O'CONNOR, C.J., and FRENCH, J., concur in the foregoing opinion.

_____

Wickens Herzer Panza and Daniel A. Cook, for relator.

Zagrans Law Firm, L.L.C., and Eric H. Zagrans, for respondent.

_____