CLEVELAND METROPOLITAN BAR ASSOCIATION v. PODOR.

[Cite as *Cleveland Metro. Bar Assn. v. Podor,*
121 Ohio St.3d 131, 2009-Ohio-358.]

132

(No. 2008–1205—Submitted October 8, 2008—Decided February 5, 2009.)

**Per Curiam.**

{¶ 1} Respondent, Kenneth Charles Podor of Solon, Ohio, Attorney Registration No. 0014067, was admitted to the practice of law in Ohio in 1978. The Board of Commissioners on Grievances and Discipline recommends that this court suspend his license to practice law for one year, stayed on conditions. It found that respondent had violated the Code of Professional Responsibility in that he provided financial assistance for living expenses to clients. We agree that respondent violated the Code of Professional Responsibility as found by the board, and we further agree that a one-year suspension, stayed on the conditions that he complete an additional six hours of continuing legal education in ethics and office management and commit no further disciplinary violations, is appropriate.

{¶ 2} Respondent was the sole owner of Podor and Associates, located in Beachwood and Solon, Ohio. Respondent also owns International Media Marketing, Inc. ("IMMI"), which produces advertisements for legal services, primarily for television, and sells diet and exercise advice, primarily on the Internet. Respondent controlled both the law practice and IMMI and was responsible for all decisions.

{¶ 3} Respondent represented Carla White, a long-time client and friend, and her husband, Charles White, in connection with their personal-injury litigation. The board found that during the pendency of the personal-injury litigation, Ms. White asked respondent to advance her money for living expenses. Respondent, through his corporation IMMI, gave the Whites $19,800 while their case was pending. Ms. White also made a brief appearance in one of IMMI's commercials, and respondent suggested during the investigation of this case that the advance was actually payment for her commercial appearance. The loan has since been repaid using the proceeds of the settlement of the lawsuit. The parties have stipulated that this loan violated DR 5–103(B).

{¶ 4} In its amended complaint, relator, the Cleveland Metropolitan Bar Association, charged respondent with four counts of professional misconduct. After dismissal of two counts, the matter proceeded to a hearing before the panel on counts one and three. The panel found insufficient evidence supporting the relator's allegations in count three that respondent had collected an illegal or clearly excessive fee. We agree with the board's recommendation to dismiss count three.

{¶ 5} Count one of the amended complaint charged respondent with violating DR 5–103(B) of the Code of Professional Responsibility. DR 5–103(B) provides: "While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to the client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, the repayment of which may be contingent on the outcome of the matter."

{¶ 6} The hearing panel found by clear and convincing evidence that respondent had violated DR 5–103(B) by advancing financial assistance to current clients.

{¶ 7} In mitigation, the panel found that respondent had not acted out of a dishonest or selfish motive; as aggravating factors, the panel found that respondent had a prior disciplinary violation resulting in a stayed suspension from the practice of law in 1995, *Cleveland Bar Assn. v. Podor* (1995), 72 Ohio St.3d 40, 647 N.E.2d 470, and that he had engaged in a deceptive practice during the disciplinary process. As a result, the panel recommended a one-year suspension from the practice of law, stayed on conditions. The Board of Commissioners on Grievances and Discipline adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 8} Relator objects to the recommended sanction, urging that respondent's prior disciplinary history and "equivocation and reluctance to be truthful" demonstrated a lack of remorse and a lack of understanding of his wrongdoing justifying a more severe sanction than the board recommends.

{¶ 9} Respondent notes that the hearing panel did not find that he had been untruthful, but rather characterized his testimony as "somewhat guarded" and described respondent as "reluctan[t] to fully admit his motivation." Respondent contends that any lack of clarity in his testimony stemmed from his inability to precisely describe the financial arrangement between himself and his clients in legal terms.

{¶ 10} We accept the board's findings that respondent's financial assistance to the Whites violated DR 5–103(B).

{¶ 11} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties the lawyer violated, the lawyer's mental state, and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-

Ohio-5251, 875 N.E.2d 935, ¶ 21.  Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose.  BCGD Proc.Reg. 10(B).

{¶ 12} Regarding mitigating factors, we accept the board's finding that respondent did not act out of a dishonest or selfish motive.  Regarding aggravating factors, we also accept the board's findings that respondent had a prior disciplinary offense and engaged in a deceptive practice during the disciplinary process in that he testified inconsistently about his motivations for giving the money to the Whites.

{¶ 13} The primary purpose of the disciplinary process is to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship and to allow us to ascertain the lawyer's fitness to practice law.  *Disciplinary Counsel v. Agopian,* 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10.  In this case, that goal is served by a one-year suspension stayed on the conditions that respondent complete an additional six hours of continuing legal education in ethics and office management and that he commit no further disciplinary violations.

{¶ 14} We therefore suspend respondent from the practice of law in Ohio for one year.  That suspension is stayed on the conditions that respondent successfully complete, during the stayed suspension period, at least six hours of continuing legal education in ethics and office management beyond the hours required of all other attorneys in Ohio and that respondent commit no further disciplinary violations.  If respondent fails to comply with the terms of this stay, the stay will be lifted, and respondent will serve the entire one-year suspension.

{¶ 15} Costs are taxed to respondent.

                                                        Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., and O'CONNOR, J., dissent.

---

**MOYER, C.J., dissenting.**

{¶ 16} I respectfully dissent from the sanction imposed on respondent by the majority.  The violation of DR 5–103(B) and the aggravating factors present in this case warrant an actual suspension from the practice of law.  Respondent provided financial support to clients for living expenses in violation of the Disciplinary Rules.  DR 5–103(B).  The disciplinary hearing panel also found two aggravating factors.  First, during the disciplinary process, respondent engaged in a deceptive practice by giving guarded testimony regarding his motivation for

providing the money to the client. While he admitted that he gave the client money to provide her with financial support, he still attempted to claim that it was payment for appearing in a commercial. We have stated previously that an actual suspension should be imposed for a " 'continuing course of deceit and misrepresentation designed to cover up' wrongdoing." *Cincinnati Bar Assn. v. Farrell,* 119 Ohio St.3d 529, 2008-Ohio-4540, 895 N.E.2d 800, ¶ 21, quoting *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 190, 658 N.E.2d 237. While respondent's guarded testimony certainly does not amount to a continuing course of deceit and misrepresentation, it is a factor that supports an actual suspension.

{¶ 17} Second, respondent has previously been disciplined by this court for violations of DR 2–106(A), 5–105(A), and 5–105(B) when he collected a clearly excessive fee and represented two clients with conflicting interests. We imposed a six-month stayed suspension, an order from which I dissented, preferring not to stay the suspension. *Cleveland Bar Assn. v. Podor* (1995), 72 Ohio St.3d 40, 647 N.E.2d 470. An attorney's "prior disciplinary record reinforces [a] decision to impose an actual suspension" because " '[p]rior disciplinary offenses shall be considered as a factor that may justify an increase in the degree of discipline * * * for subsequent misconduct.' " *Disciplinary Counsel v. King* (1996), 74 Ohio St.3d 612, 614, 660 N.E.2d 1160, quoting Gov.Bar R. V(6)(C).

{¶ 18} The presence of both of the above aggravating factors here, along with respondent's violation of DR 5–103(B), makes an actual suspension appropriate. I would adopt the relator's recommendation of a six-month suspension.

O'CONNOR, J., concurs in the foregoing opinion.

---

Ellen S. Mandell, Bar Counsel, and Brian P. Riley, for relator.

Joseph E. Rutigliano, for respondent.