TOLEDO BAR ASSOCIATION *v.* PHEILS.

[Cite as *Toledo Bar Assn. v. Pheils,* 129 Ohio St.3d 279, 2011-Ohio-2906.]

*Attorneys — Misconduct — Providing financial assistance to client — Conflict of*
*interest — One-year suspension with six months stayed on conditions.*

(No. 2010-1886 — Submitted February 16, 2011 — Decided June 23, 2011.)

ON CERTIFIED REPORT of the Board of Commissioners on Grievances and
Discipline of the Supreme Court, No. 10-019.

_____

**Per Curiam.**

{¶ 1} Respondent, David R. Pheils Jr. of Toledo, Ohio, Attorney
Registration No. 0005574, was admitted to the practice of law in Ohio in 1974.
On February 8, 2010, relator, the Toledo Bar Association, filed a four-count
complaint charging respondent with numerous disciplinary violations, including
providing financial assistance to a client and creating a conflict of interest by
representing clients with adverse interests.

{¶ 2} A panel of the Board of Commissioners on Grievances and
Discipline held a hearing and issued findings of fact, conclusions of law, and a
recommended sanction. The board adopted the panel's findings and conclusions
and recommended that respondent be suspended from the practice of law for one
year with six months stayed on conditions.

{¶ 3} For the following reasons, we adopt the board's recommendation.

## I. Misconduct

{¶ 4} Charles Robinson hired respondent to represent him as a plaintiff
in a civil action (the "Royal Homes" case).[1] Respondent negotiated a settlement,

---

1. Respondent also represented two coplaintiffs in the Royal Homes case. However, because they
are irrelevant to resolving the disciplinary charges against respondent, we do not refer to them in
the opinion.

pursuant to which Robinson was to receive $20,000. Defense counsel prepared the settlement agreement, but respondent advised Robinson not to sign it because he believed that the agreement imposed obligations to which Robinson had not agreed. While Robinson was discussing with a coplaintiff whether to sign the settlement agreement, respondent overheard Robinson say that he needed money and that he wanted to settle the case so that he could get his money. Later, Robinson asked respondent for a loan. Robinson testified that respondent told him to come back later that afternoon and respondent would have a $4,000 check ready. Respondent arranged for his wife to lend Robinson $4,000. When Robinson returned to respondent's office later that day, there was a $4,000 check from respondent's wife for Robinson. Robinson also signed a promissory note. Robinson had never met respondent's wife, and she was not present when Robinson picked up the check.

{¶ 5} Respondent prepared the promissory note and acted as his wife's attorney for purposes of the loan. However, respondent never advised Robinson to seek independent counsel regarding the transaction, and he never acquired Robinson's informed consent before representing his wife's adverse interests in the loan.

{¶ 6} Subsequent to the loan, respondent and defense counsel continued to negotiate over the language of the settlement agreement in the Royal Homes case. Eventually, the trial court granted the defendants' motion to enforce the agreement, and respondent advised Robinson to appeal. Respondent had Robinson sign an "Addendum to Representation Agreement," in which Robinson agreed to share costs and expenses from any recovery in excess of $20,000 in the event of a retrial. On June 25, 2008, respondent filed an appeal on Robinson's behalf.

{¶ 7} Robinson testified that he did not want to appeal; he wanted to accept the settlement. Respondent was aware that Robinson was still having

financial difficulties, and eventually, Robinson asked respondent for another loan. Respondent arranged another loan from his wife to Robinson in July 2008. In connection with this loan, respondent acquired a cashier's check for $10,500 issued by the Huntington Bank payable to respondent's firm's escrow account. Respondent testified that the money was withdrawn from his wife's Huntington Bank account. However, he never produced any evidence to indicate the source of these funds. Respondent deposited the $10,500 cashier's check into his firm's escrow account. On July 3, 2008, a $10,450 check from respondent's firm's escrow account was issued with Robinson and his wife named as the payees. The check was signed by respondent, but it included a typed notation indicating that it was a loan from respondent's wife. Robinson signed a promissory note for $14,500. Ostensibly, $4,050 of the $14,500 loan was used to repay the principal and interest on the $4,000 loan. Robinson also agreed to assign his rights in the Royal Homes case to respondent's wife as security for the loan.

{¶ 8} Respondent drafted the promissory note and the assignment agreement. And respondent again acted as his wife's attorney in the loan transaction. Respondent did not advise Robinson to seek independent counsel regarding the loan, nor did he acquire Robinson's informed consent before representing his wife's adverse interest in the loan.

{¶ 9} Several months after receiving the second loan, Robinson hired a new attorney and signed a settlement agreement in the Royal Homes case. Robinson terminated respondent as his lawyer in a letter dated November 17, 2008.

{¶ 10} On December 17, 2008, respondent, representing his wife, filed suit against Robinson seeking repayment of the loans pursuant to the promissory note and the assignment agreement. Respondent dismissed the case after Robinson repaid the loans from proceeds he received in settling the Royal Homes case.

{¶ 11} Pursuant to counts 1 and 3 of relator's complaint, the panel found that respondent had violated Prof.Cond.R. 1.8(e) (prohibiting a lawyer from providing financial assistance to a client in connection with pending litigation) and 8.4(a) (prohibiting a lawyer from violating the Ohio Rules of Professional Conduct through the acts of another). Pursuant to counts 2 and 3, the panel also found that respondent had violated Prof.Cond.R. 1.7(a) (prohibiting a lawyer's continued representation of a client if the representation of that client would be directly adverse to another client) and 1.7(b) (prohibiting the continued representation of a client if a conflict of interest would be created, unless the affected client gives informed consent in writing).

{¶ 12} However, pursuant to counts 1 and 3, the panel concluded that there was insufficient evidence to prove that respondent had violated Prof.Cond.R. 1.8(a) (forbidding business transactions with a client or the knowing acquisition of a pecuniary interest adverse to a client, unless the transaction is fair and reasonable, the client is advised in writing to seek independent legal counsel, and the client gives informed consent in writing). The panel further recommended dismissal of the allegation in count 3 that respondent violated Prof.Cond.R. 1.8(i) (prohibiting the acquisition of a pecuniary interest in the litigation the lawyer is conducting for a client), as well as the charge in count 4 of a violation of Prof.Cond.R. 8.1(b) (prohibiting a lawyer from failing to respond to or failing to disclose a material fact in responding to a demand for information by a disciplinary authority).

{¶ 13} The board adopted the panel's findings of fact and conclusions of law, but rejected the panel's recommendation of a one-year suspension, all stayed on conditions. Based on respondent's contempt for his obligations and for the disciplinary system, as well as his repeated deceptions throughout the proceedings, the board recommended that we suspend respondent for one year, with six months stayed upon conditions.

{¶ 14} Respondent objects to the board's conclusions and recommended sanction. The relator filed an answer to respondent's objections. For the reasons that follow, we overrule respondent's objections and accept the board's findings of fact, conclusions of law, and recommended sanction.

## II. Respondent's Objections

### A. *Providing Financial Assistance*

{¶ 15} Respondent steadfastly maintains that he did not provide financial assistance to Robinson, because it was respondent's wife who lent money to Robinson. Respondent argues that a violation of Prof.Cond.R. 1.8(e) can occur only when the financial assistance comes directly from the attorney. Respondent also argues that if we hold that he improperly provided financial assistance to Robinson, it will discourage attorneys from assisting clients in securing loans from a bank.

{¶ 16} Except for advancing costs and expenses of litigation under certain circumstances, "[a] lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation." Prof.Cond.R. 1.8(e). Comment 10 to this rule provides that "[l]awyers may not subsidize lawsuits or administrative proceedings brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because such assistance gives lawyers too great a financial stake in the litigation."

{¶ 17} Respondent testified that the funds used to finance both loans to Robinson belonged to respondent's wife. Respondent asserts that the fact that the funds did not come directly from him is sufficient to exonerate him from a charge of violating Prof.Cond.R. 1.8(e). We disagree. If respondent had referred Robinson to a bona fide financial institution, our answer would be different. A lending institution has absolutely no stake in the litigation and no interest in encouraging a borrower to pursue litigation. However, respondent did not advise

5

Robinson to seek such a loan. Instead, respondent, realizing that he could not lend money to Robinson, arranged loans from his wife. Respondent suggested to his wife that she lend the money to his client, telling her that the client "had a judgment" and that assigning the client's rights in that judgment to her "would be enough that it would cover up to a $15,000 loan." Clearly, respondent's wife relied on this advice, because she made the loans to Robinson even though she did not know him. Furthermore, Robinson received the check from the first loan on the day that he requested the loan.

{¶ 18} Under these circumstances, we find that respondent significantly influenced his wife to make the loan to Robinson. Respondent's personal relationship with his wife and his professional relationship with Robinson in the context of these loans placed him in a unique position to use financial leverage to influence Robinson's litigation of the Royal Homes case. This is precisely the type of financial assistance that Prof.Cond.R. 1.8(e) was intended to prevent.

{¶ 19} Even if respondent's sole intention was to benefit Robinson, that intention does not excuse his conduct. The prohibition against providing financial assistance to a client is absolute. Prof.Cond.R. 1.8(e) does not inquire into the attorney's motivation in providing financial assistance to a client. The mere fact that an attorney provides financial assistance to a client is a problem in and of itself because it "gives lawyers too great a financial stake in the litigation." Comment 10, Prof.Cond.R. 1.8(e).

{¶ 20} Finally, respondent's actions promoted maintenance and/or champerty. Prof.Cond.R. 1.8(e) has its basis in the common law of maintenance and champerty. See Comment 16 to Prof.Cond.R. 1.8. "Maintenance" is rendering assistance to a litigant in pursuing or defending a lawsuit provided by someone who does not have a bona fide interest in the case, while "champerty" is a form of maintenance in which a nonparty undertakes to further another person's interest in a suit in exchange for a share if a favorable result ensues. *Rancman v.*

*Interim Settlement Funding Corp.,* 99 Ohio St.3d 121, 2003-Ohio-2721, 789 N.E.2d 217, ¶ 10.  It is a disciplinary violation for an attorney to make such an agreement with a client.  See *Disciplinary Counsel v. Williams* (1990), 51 Ohio St.3d 36, 553 N.E.2d 1082 (interpreting former DR 5-103(A)).

**{¶ 21}** Respondent's wife, who had no interest in the Royal Homes case, lent money to Robinson, and in return, Robinson assigned to her his rights in the Royal Homes case.  Clearly, this agreement promoted maintenance and /or champerty.

**{¶ 22}** Therefore, we hold that respondent violated Prof.Cond.R. 1.8(e) and 8.4(a).

### B.  Conflict of Interest

**{¶ 23}** Respondent also argues that he did not create a conflict of interest by representing both his wife and Robinson in the loan transactions.  Specifically, he asserts that his representation of Robinson was expressly limited to the Royal Homes case, and therefore, Robinson was not his client with regard to the loans.  Thus, respondent argues that he did not create a conflict of interest by representing his wife in those transactions.

**{¶ 24}** We acknowledge that Prof.Cond.R. 1.2(c) provides, "A lawyer may limit the scope of a new or existing representation if the limitation is *reasonable* under the circumstances and communicated to the client, preferably in *writing*."  (Emphasis sic.)  However, the issue is not about limiting the scope of representation.  Respondent still represented Robinson in the Royal Homes case, the very matter that he agreed to undertake.  The settlement was not concluded.  This rule does not excuse an attorney for committing misconduct in representing clients with conflicting interests.

**{¶ 25}** Respondent represented Robinson in the Royal Homes case.  However, because the attorneys could not agree on the terms of a settlement in that case, Robinson was unable to recover the proceeds from the settlement at a

time when he needed the money. Consequently, Robinson asked respondent for loans on two different occasions during the pendency of the litigation. Respondent arranged two loans from his wife so that he could buy time by reducing Robinson's financial pressures, which allowed respondent to continue negotiating the settlement. Under these particular circumstances, we find that both loan transactions fell within the scope of respondent's representation of Robinson in the Royal Homes case.

{¶ 26} Thus, respondent represented both his wife and Robinson in the two loans. Representing both the lender and the borrower within the same transaction creates a conflict of interest. *Columbus Bar Assn. v. Ewing* (1992), 63 Ohio St.3d 377, 588 N.E.2d 783. And respondent acknowledged that he did not advise Robinson to seek independent counsel for either loan, nor did he acquire informed consent from Robinson. Indeed, this conflict resulted in respondent's suing his own client for the proceeds of the loan after respondent's services were terminated, and the loan was in fact repaid from the proceeds of the eventual settlement, the very situation that Prof.Cond.R. 1.7 was designed to prevent. Accordingly, we hold that respondent's conduct created a conflict of interest in violation of Prof.Cond.R. 1.7(a) and 1.7(b).

## III. Sanction

{¶ 27} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

*A. Mitigating and Aggravating Factors*

**{¶ 28}** In support of mitigation, respondent argues that he is retired and does not intend to practice law again, and therefore our sanction should be limited to a reprimand. While respondent claims that he has voluntarily decided to retire from practicing law, he is currently registered as an active attorney with this court. Unlike an attorney who has retired or resigned from the practice of law pursuant to Gov.Bar R. VI(6), an act that is "unconditional, final, and irrevocable," Gov.Bar R. VI(6)(A)(1)(c), respondent could decide to begin practicing again at any time. Therefore, respondent's claim that he is retired will not affect the sanction that we will impose.

**{¶ 29}** In mitigation, the board found that respondent did not have any prior disciplinary violations. BCGD Proc.Reg. 10(B)(2)(a). However, the panel found the following aggravating factors: respondent committed multiple offenses (BCGD Proc.Reg. 10(B)(1)(d)), he did not cooperate with the disciplinary process (10(B)(1)(e)), he engaged in deceptive practices (10(B)(1)(f)), and he refused to acknowledge the wrongful nature of his conduct (10(B)(1)(g)). We agree with all the board's conclusions regarding the mitigating and aggravating factors. It is clear that respondent committed multiple violations and that he continues to deny wrongdoing.

**{¶ 30}** Further, respondent failed to disclose material facts in an attempt to deceive the panel regarding the source of funds for the second loan to Robinson. In response to relator's interrogatory requesting a list of respondent's bank accounts, either personal or business, respondent answered that he had none. However, when questioned regarding the source of the funds for the loans to Robinson, respondent testified that he and his wife kept their accounts separate. He contradicted himself again when he later said that his wife kept her accounts separate, but he did not have any.

**{¶ 31}** Finally, respondent's interaction with relator's counsel during the investigation was at times uncooperative. For example, when relator's counsel inquired by e-mail about respondent's failure to provide discovery in a timely manner, respondent replied:

**{¶ 32}** "Have you ever practiced trial Law? Do you have any familiarity with the rules of discovery? Can you read and understand the English Language? I do not believe that my cooperation requires me to correct your incompetence and/or ignorance and/or do your work for you. We await any cogent, informed, rational and fact base [sic] response which to date we have been denied."

**{¶ 33}** Accordingly, we find that the aggravating factors outweigh the mitigating factors in this case.

*B. Case Law*

**{¶ 34}** In *Cleveland Metro. Bar Assn. v. Podor*, 121 Ohio St.3d 131, 2009-Ohio-358, 902 N.E.2d 488, an attorney represented clients in a personal-injury case. During the litigation, the attorney, through his corporation, lent his clients $19,800. We concluded that respondent had provided his clients financial assistance in violation of former DR 5-103(B) (prohibiting a lawyer from advancing financial assistance to client except in certain circumstances). We imposed a one-year suspension of respondent's license, with the entire suspension stayed on conditions.

**{¶ 35}** However, in the instant case, providing financial assistance to a client was not respondent's only disciplinary violation. Respondent also caused a conflict of interest by representing both his wife and Robinson in the loan transaction between his wife (the lender) and Robinson (the borrower). And in fact, respondent, on behalf of his wife, eventually filed suit against Robinson to recover the proceeds from the loans. We have held that an actual suspension is appropriate when an attorney's representation of multiple clients creates an actual

conflict of interest. See, e.g., *Cuyahoga Cty. Bar Assn. v. Newman*, 102 Ohio St.3d 186, 2004-Ohio-2068, 808 N.E.2d 375 .

### IV. Conclusion

{¶ 36} In considering the sanction that we have imposed in similar cases, the aggravating and mitigating factors in this case, and respondent's conduct in this case, including his uncooperative attitude and deceptive responses pertaining to the investigation, we agree with the board that an actual suspension is warranted. Accordingly, we accept the recommendation of the board. Respondent is therefore suspended from the practice of law for one year, with six months stayed upon the conditions that respondent complete an additional six hours of continuing legal education in ethics and office management and that he not commit further disciplinary violations. If he fails to comply with these conditions, the stay will be lifted, and he will serve the full one-year suspension.

{¶ 37} Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Kitch, Drutchas, Wagner, Valitutti & Sherbrook and Patrick B. Cavanaugh; and Michael A. Bonfiglio, Bar Counsel, for relator.

David R. Pheils Jr. and Marshall D. Wisniewski, for respondent.

_____