**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cincinnati Bar Assn. v. Kathman*, **Slip Opinion No. 2021-Ohio-2189.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-2189

CINCINNATI BAR ASSOCIATION *v*. KATHMAN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati Bar Assn. v. Kathman*, Slip Opinion No. 2021-Ohio-2189.]**

*Attorneys—Misconduct—Multiple violations—Failure to supervise nonlawyer employee—Improper financial assistance to clients—Failure to properly maintain records for the Interest on Lawyers Trust Account ("IOLTA")—Improper commingling of personal funds with client funds in the IOLTA—Improper use of the IOLTA—Failure to safeguard IOLTA funds and timely remedy unauthorized access to the IOLTA—One-year suspension with six months conditionally stayed—Condition on reinstatement—One-year of monitored probation upon reinstatement.*

(No. 2021-0216—Submitted March 31, 2021—Decided June 30, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-022.

_____

**Per Curiam.**

{¶ 1} Respondent, Edward Timothy Kathman, Attorney Registration No. 0055446, of Norwood, Ohio, was admitted to the practice of law in Ohio in 1991. In June 2001, we suspended Kathman from the practice of law for six months for practicing law under a trade name, sharing legal fees with a nonlawyer, and aiding a nonlawyer in the unauthorized practice of law. *Cincinnati Bar Assn. v. Kathman*, 92 Ohio St.3d 92, 748 N.E.2d 1091 (2001).

{¶ 2} In a five-count amended complaint filed on July 7, 2020, relator, Cincinnati Bar Association, charged Kathman with multiple violations of the Rules of Professional Conduct. The alleged violations arose, in part, from Kathman's failure to properly supervise a paralegal, Jillian Gorman, who pleaded guilty to forgery and theft after embezzling funds from Kathman's law practice. The complaint also charged Kathman with misconduct in relation to his representation of multiple clients, using improper contingent fee agreements, providing improper financial assistance to clients, violating various requirements for the management of his Interest on Lawyer's Trust Account ("IOLTA"), and collecting legal fees in excess of those authorized by his contingent fee agreements.

{¶ 3} The parties submitted written stipulations of fact, a stipulation regarding mitigation, and joint exhibits for the board's consideration; they also stipulated to multiple violations of the Rules of Professional Conduct by Kathman. On October 19, 2020, a three-member panel of the board conducted a hearing at which Kathman testified and at which the panel admitted the stipulations and 62 joint exhibits into evidence. The panel also granted relator's unopposed motion to amend the complaint to conform to the stipulations and the evidence presented.

{¶ 4} Following the hearing, the panel issued an order unanimously dismissing five alleged rule violations, two of which had been withdrawn by relator at the hearing. Thereafter, the panel issued a report in which it unanimously dismissed four more alleged violations and recommended the dismissal of a fifth

based on insufficiency of the evidence. The panel otherwise found that Kathman had violated the Rules of Professional Conduct in accordance with the stipulations of the parties.

{¶ 5} After considering aggravating and mitigating factors, the panel recommended that Kathman be suspended for one year with six months conditionally stayed and that Kathman be ordered to work with a practice monitor for one year after reinstatement.

{¶ 6} The board adopted the panel's findings and conclusions and recommended sanction. Neither party filed objections to the board's report.

{¶ 7} We agree with the board's findings of fact and conclusions of law, and we adopt the board's recommended sanction.

## I. MISCONDUCT

### A. *Kathman failed to supervise his paralegal*

{¶ 8} In June or July 2015, Kathman hired Jillian Gorman to work as a paralegal in his law practice. Gorman's job duties were related to Kathman's representation of personal-injury plaintiffs and included preparing continent-fee agreements using the form that Kathman had adopted in his practice, corresponding with insurance companies on Kathman's behalf, and collecting information related to clients' damages and medical expenses. Kathman also authorized Gorman to prepare closing statements after a client had settled a personal-injury claim and to write—but not sign—checks on Kathman's IOLTA to distribute the settlement proceeds to the client. Kathman did not give Gorman authority to enter into contingent-fee agreements on his behalf or to sign checks on his operating account.

{¶ 9} Gorman carried out her assigned duties with minimal or no oversight. Kathman gave her a laptop and permitted her to work outside of his small office, but the laptop was not linked or networked with his office computer.

{¶ 10} Kathman discovered Gorman's wrongdoing during the week of July 3, 2017, while Gorman was on vacation: he opened a bank statement related to his

client trust account and discovered that certain checks had cleared that were out of the numerical sequence. After inquiring with the bank, he discovered the checks had been made payable to Gorman herself. He demanded that Gorman return the computer but concluded that it was "inoperable" and did not recover any data from it.

{¶ 11} Kathman terminated Gorman's employment and reported her actions to the Norwood police. Gorman pleaded guilty to one count of theft and one count of forgery, was sentenced to five years community control, and was ordered to make restitution in the amount of $200,000. *State v. Gorman*, Hamilton C.P. No. B 1701441 (Feb. 28, 2018). As of October 13, 2020, Gorman had made restitution of only $2,535.

### B. The Jeffrey Welch grievance

{¶ 12} In February 2016, Gorman witnessed an accident in which Jeffrey Welch was injured, and at the scene, she recommended that Welch hire Kathman. The parties stipulated that Welch would have testified at Kathman's disciplinary hearing that he had met with Gorman and Kathman within two weeks of the accident and signed papers so that Kathman could prosecute a claim on his behalf. But Kathman disputes that such a meeting occurred.

{¶ 13} Kathman maintains that he never discussed any aspect of Welch's case, including its value, with Gorman or Welch before October 2016. Kathman has no records of his representation of Welch, and he has no knowledge whether any such documentation was stored on the laptop he had provided to Gorman.

{¶ 14} Kathman stipulated that Gorman invited Welch to her house in October 2016, where she discussed a settlement amount of $20,000 with him. Kathman testified that he spoke with Welch on the phone a few times and invited Welch to meet with him at his office. On November 29, 2016, Welch signed a release and settlement agreement during a meeting with Kathman and Gorman. Neither Gorman nor Kathman provided Welch with a copy of the release and

4

settlement agreement, and Welch never received the settlement amount. At a subsequent meeting with Kathman, Welch asked about the status of a $20,000 settlement check that had been issued by the insurance company in his case. When Kathman inquired into the issuance of a $20,000 check by the insurance company in connection with the Welch case, he learned that Gorman had forged his signature on the back of the check.

{¶ 15} The parties stipulated and the board found that Kathman's conduct violated Prof.Cond.R. 5.3(a) (requiring a lawyer possessing managerial authority in a law firm to make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the conduct of a nonlawyer employed by the firm is compatible with the professional obligations of the lawyer) and 5.3(b) (requiring a lawyer having direct supervisory authority to take reasonable efforts to ensure that a nonlawyer employee's conduct is compatible with the professional obligations of the lawyer).

*C. Improper financial assistance to clients*

{¶ 16} Kathman provided improper financial assistance to clients on five occasions. He advanced $1,000 to Robert Lamb, $4,500 to Gene Atkins, $600 to Brittany Martin, $700 to Jeffrey Ivery, and $200 to Jacklyn Cunningham before settling their cases. He later reimbursed himself out of their settlement proceeds.

{¶ 17} With respect to these occurrences, the parties stipulated and the board found that Kathman violated Prof.Cond.R. 1.8(e) (prohibiting a lawyer from providing financial assistance to a client in connection with pending or contemplated litigation except in certain limited circumstances).

*D. Trust-account violations*

**1. Record-keeping violations**

{¶ 18} Prof.Cond.R. 1.15(a) requires attorneys to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property, and to create and maintain certain records regarding the client funds held

in their IOLTA. Kathman used his IOLTA to mainly receive and disburse settlement proceeds from personal-injury cases. Instead of creating a separate record for the account itself indicating the date, amount, and client affected for each debit and credit, Kathman relied on the account's check register. Kathman stipulated that he also failed to maintain a copy of the individual deposit receipts or slips for each of the deposits he made into the account and that he did not perform and retain a monthly account reconciliation.

{¶ 19} On these facts, the parties stipulated and the board found that Kathman violated Prof.Cond.R. 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account, setting forth the account balance and the name of the account, the date, the amount, and the client affected by each credit and debit), 1.15(a)(4) (requiring a lawyer to maintain all bank statements, deposit slips, and canceled checks, if provided by the bank, for each bank account), and 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account).

{¶ 20} Although relator also alleged that Kathman failed to promptly deliver funds to a client named Patricia Matthews as a result of his poor record-keeping and lax supervision of his paralegal, the board found insufficient evidence to support that allegation. We therefore dismiss the alleged violation of Prof.Cond.R. 1.15(d).

### 2. Improperly keeping personal funds in the IOLTA

{¶ 21} Kathman stipulated that between February 1, 2016, and March 31, 2020, he consistently kept more than a minimal amount of his own funds in the IOLTA—indeed, for a three-month period he kept at least $150,000 of his own funds in the account. The parties stipulated and the board found that by doing so, Kathman violated Prof.Cond.R. 1.15(b) (prohibiting a lawyer from depositing his or her own funds in a client trust account except to pay or obtain a waiver of bank service charges). The board also found by clear and convincing evidence that this

6

conduct resulted in the improper commingling of personal and client funds in violation of Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property).

{¶ 22} The board found that Kathman committed additional violations of Prof.Cond.R. 1.15(a) and 1.15(b) with respect to several specific clients. In multiple instances, Kathman provided payees with checks from his IOLTA, allowing them to cash the checks and secure the IOLTA funds before Kathman's bank had collected or finally received payment on the checks that provided the source of the amounts paid out. With respect to several other clients, Kathman provided checks to payees before he deposited the settlement check that was supposed to be the source of the payments. In each of these instances, there was no overdraft of the IOLTA, because Kathman maintained sufficient funds of his own in the account.

{¶ 23} One client provided $1,500 in cash to Kathman for the purpose of settling an arrearage in child support. Kathman deposited the cash into his IOLTA and issued a check payable to the client's former spouse on the same date. Kathman failed to create an individual ledger or trust-account record pertaining to these transactions.

{¶ 24} The record also shows and the parties have stipulated that, on at least two occasions, Kathman accepted or held funds in his IOLTA for a "friend" although the funds had no relationship to a legal matter.

{¶ 25} Based on these stipulations regarding improper use of the IOLTA and commingling of Kathman's personal funds with client funds, the board found additional violations of Prof.Cond.R. 1.15(a) and 1.15(b).

### 3. Failure to timely remedy unauthorized access to the IOLTA

{¶ 26} Kathman stipulated that at some point, he had permitted a client to pay him through PayPal for legal services he was retained to provide. Kathman provided the PayPal account information to the client and, when Kathman received

the client's payment into that account, he linked the PayPal account to his IOLTA. Thereafter, without Kathman's permission or—initially—knowledge, someone gained access to his PayPal account and, through that, to the IOLTA. That person effected various payments out of the IOLTA that were unrelated to the interest of any of Kathman's clients or Kathman himself and were unauthorized by Kathman or any client.

{¶ 27} No client suffered any loss as a result of these unauthorized transactions, because the bank paid all the charges out of Kathman's personal funds that were on deposit in the IOLTA. Because Kathman's initial efforts to remedy the unauthorized use of his IOTLA through PayPal failed, the unauthorized use continued over a prolonged period of time. Finally, Kathman cured the problem by opening a new IOLTA through which future transactions would be conducted while leaving the earlier IOLTA open to allow outstanding transactions to be completed.

{¶ 28} In light of these stipulations, the board found that Kathman "fail[ed] to safeguard funds of his clients or third persons" and that he thereby violated Prof.Cond.R. 1.15(a).

## II. SANCTION

### A. Mitigating and aggravating factors

{¶ 29} With respect to mitigating factors, the board accepted the parties' stipulation that Kathman exhibited a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(4). Additionally, the board found that Kathman acted without a selfish or dishonest motive, made a timely, good-faith effort to make restitution or to rectify the consequences of his misconduct, and presented evidence of good character or reputation in the form of 13 letters. *See* Gov.Bar R. V(13)(C)(2), (3), and (5).

{¶ 30} As for aggravating factors, the board found that Kathman had prior discipline that resulted in an actual suspension from the practice of law and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(1) and (4).

**{¶ 31}** We agree with the board's findings of mitigating and aggravating factors.

*B. The recommended sanction*

**{¶ 32}** When imposing a sanction for attorney misconduct, we consider all the relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

**{¶ 33}** Kathman advocated an 18-month suspension, all stayed on conditions. The bar association advocated a two-year suspension with six months stayed on conditions. After reviewing pertinent cases, the board concluded that Kathman should be subject to a one-year suspension with six months stayed on the condition that prior to being reinstated, he complete 24 hours of CLE on the subjects of professional ethics and law-office management. The board further recommended that upon reinstatement to the practice of law, Kathman be required to work with a practice monitor approved by relator, with monitoring to be focused on professional ethics, personnel management, law-office management, and compliance with the IOLTA and record-keeping requirements of the Rules of Professional Conduct.

**{¶ 34}** With respect to Kathman's failure to properly supervise Gorman's work, the board consulted *Disciplinary Counsel v. Ball*, 67 Ohio St.3d 401, 618 N.E.2d 159 (1993). In that case, the lawyer relinquished significant aspects of his probate practice to his secretary and failed to set up any safeguards to ensure proper administration of the matters entrusted to him by clients. Ball was charged with violating DR 6-101(A)(3) ("A lawyer shall not * * * neglect a legal matter entrusted to him") [now Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client)], and we determined that his "total failure to supervise any work done by his nonlawyer employee [was] the gravamen of [the] case." *Id.* at 403-404. We found that "the lack of any semblance of supervisory control over the

work delegated [to the secretary] constitutes neglect of legal duties" and imposed a six-month suspension from the practice of law. *Id.* at 405.

{¶ 35} With respect to Kathman's trust-account violations, the board cited two cases. In *Disciplinary Counsel v. Murraine*, 130 Ohio St.3d 397, 2011-Ohio-5795, 958 N.E.2d 942, the lawyer began to use his trust account as a personal bank account, depositing payroll checks into the account and writing checks for personal and business expenses that drew on the account. Although Murraine commingled personal funds and client funds, there was no evidence that he used client funds to pay personal expenses or that he used the account to defraud creditors. *Id.* at ¶ 5. We accepted the parties' amended consent-to-discipline agreement and imposed a one-year suspension with the entire suspension stayed on the condition that the lawyer commit no further misconduct. *Id.* at ¶ 3.

{¶ 36} In *Disciplinary Counsel v. Alexander*, 133 Ohio St.3d 232, 2012-Ohio-4575, 977 N.E.2d 633, ¶ 3-6, the lawyer (i) deposited personal funds into his IOLTA, (ii) wrote checks against his IOLTA to pay for personal and business expenses, (iii) failed to maintain a ledger of client funds for at least four years prior to the filing of the disciplinary complaint, and (iv) failed to advise his client in writing that he was dividing fees with another attorney not in the same firm. The lawyer admitted that there were client funds in the IOLTA during the time he used the account for personal expenses. We departed from the stipulated sanction of a fully stayed suspension and instead imposed a one-year suspension with six months stayed. In doing so, we noted that " '[t]he mishandling of clients' funds either by way of conversion, commingling, or just poor management, encompasses an area of the gravest concern of this court in reviewing claimed attorney misconduct.' " *Id.* at ¶ 12, quoting *Columbus Bar Assn. v. Thompson*, 69 Ohio St.2d 667, 669, 433 N.E.2d 602 (1982). Accordingly, the failure to maintain personal and office accounts separate from client accounts " 'warrants a substantial sanction, whether or not the client has been harmed.' " *Id.* at ¶ 12, quoting *Erie-Huron Counties Joint*

*Certified Grievance Commt. v. Miles*, 76 Ohio St.3d 574, 577, 669 N.E.2d 831 (1996).

{¶ 37} With respect to Kathman's advancing money to his clients, the board cited *Cleveland Metro. Bar Assn. v. Podor*, 121 Ohio St.3d 131, 2009-Ohio-358, 902 N.E.2d 488. In *Podor*, the lawyer advanced $19,800 to personal-injury clients who later repaid him out of settlement proceeds. *Id.* at ¶ 3. Like Kathman, the lawyer had a prior disciplinary offense, and we imposed a one-year suspension stayed on conditions. *Id.* at ¶ 7, 14.

{¶ 38} In the present case, Kathman's failure to supervise Gorman, together with the trust-account violations and the multiple instances of advancing money to clients, warrants an actual suspension, particularly in light of his prior disciplinary offense. Also relevant here, as in *Podor*, is the mitigating fact of character letters attesting to Kathman's honesty and competence. We therefore adopt the board's recommendation that Kathman be suspended from the practice of law for one year with six months conditionally stayed, that his reinstatement to the practice of law be conditioned on the completion of at least 24 hours of CLE in professional ethics and law-office management, and that he be required to serve a one-year period of monitored probation upon his reinstatement to the practice of law.

### III. CONCLUSION

{¶ 39} We adopt the findings of fact, conclusions of law, and recommended sanction of the board. Accordingly, we suspend Kathman from the practice of law for one year, with six months of that suspension stayed on the conditions that Kathman engage in no further misconduct and that he pay the cost of these proceedings. If Kathman violates any of these conditions, the stay will be lifted and Kathman will serve the full one-year suspension from the practice of law. Prior to his reinstatement to the practice of law, Kathman shall complete a minimum of 24 hours of CLE on the topics of professional ethics and law-office management. And upon reinstatement to the practice of law, he shall serve a one-year term of

monitored probation pursuant to Gov.Bar R. V(21), during which he shall accept the appointment by relator of an attorney monitor who shall provide guidance to Kathman on (i) professional ethics, (ii) personnel management, (iii) law-office management, and (iv) compliance with the IOLTA and record-keeping requirements of the Rules of Professional Conduct.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DeWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

John J. Mueller, L.L.C., and John J. Mueller; and Edwin W. Patterson III, Bar Counsel, for relator.

Montgomery Jonson, L.L.P., and George D. Jonson, for respondent.

_____