[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 147.]

CUYAHOGA COUNTY BAR ASSOCIATION *v.* NIGOLIAN.

[Cite as *Cuyahoga Cty. Bar Assn. v. Nigolian*, 1999-Ohio-318.]

*Attorneys at law—Misconduct—One-year suspension with six months stayed on condition—Failing to maintain identifiable accounts for client funds—Failing to maintain complete records of all client funds and to render appropriate accounts to client upon request—Neglecting an entrusted legal matter—Failing to carry out contract of employment—Failing to cooperate with a disciplinary investigation.*

(No. 99-1162—Submitted August 25, 1999—Decided October 27, 1999.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 98-60.

_____

{¶ 1} On November 10, 1998, relator, Cuyahoga County Bar Association, filed an amended complaint charging respondent, N. Stephen Nigolian of Beachwood, Ohio, Attorney Registration No. 0034132, with several violations of the Disciplinary Rules and a Rule for the Government of the Bar. The matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} Based on the stipulations, testimony, and exhibits, the panel found that respondent agreed to represent Edward Stanek ("Stanek") in a civil assault and battery case filed by Peggy Ann Sommerville and in Stanek's counterclaim for malicious prosecution. Stanek's father paid respondent $750 per month for the months of November 1995 through May 1996 as a retainer for legal services provided by respondent to Stanek, and in June 1996, respondent received an additional flat fee of ten thousand dollars. Respondent deposited the payments into his personal bank account.

**{¶ 3}** In June 1997, Stanek terminated respondent's representation. Respondent did not provide Stanek with statements of professional services rendered and failed to render appropriate accounts to Stanek regarding the use of the ten-thousand-dollar fee. Moreover, during his representation of Stanek, respondent failed to maintain identifiable records reflecting the deposit of funds received from or on behalf of Stanek. When Stanek demanded a return of the unearned portion of the ten-thousand-dollar payment, respondent agreed that he owed Stanek a refund of approximately $2,500.

**{¶ 4}** The panel further found that in November 1995, Rudolph Zimmerman paid respondent a $1,500 retainer for services to be performed by respondent in a child custody matter, which amount respondent deposited in his personal account. Respondent prepared a motion for change of custody and an accompanying affidavit, but never filed them. After Zimmerman filed the motion and affidavit himself, several hearings were scheduled from February through May 1996, but were ultimately cancelled due to respondent's failure to serve Zimmerman's ex-wife. Respondent did not attend a July 1996 hearing at which the Zimmermans reached an agreement. The magistrate, however, ordered respondent to appear and to prepare and submit a journal entry reflecting the agreement. But respondent did not prepare and submit the journal entry, and Zimmerman was required to hire another attorney, who charged him $829.95 to complete the matter.

**{¶ 5}** After Zimmerman filed a grievance with relator, respondent offered to refund $750 of the retainer fee to Zimmerman. But respondent not only failed to refund the retainer by the date of the panel hearing, he also did not provide Zimmerman with any accounting concerning the funds.

**{¶ 6}** In addition, the panel found that in September 1995, Pamela Ward retained respondent to prepare and file a joint motion for change of custody for which Ward's former husband, John Ward, paid respondent $620 in attorney fees. Respondent prepared and filed a motion to modify a shared parenting plan rather

than a motion to modify custody, but the court treated it as a motion to modify custody. Following the postponement of scheduled hearings due to respondent's inadequate preparation, the court dismissed the motion for failure to prosecute, and the Wards then hired a new attorney to complete the matter. After John Ward filed a grievance with relator, respondent agreed to refund the $620 by April 1997. Respondent, however, did not to refund the money to John Ward until June 1998.

{¶ 7} The panel concluded that in the Stanek matter, respondent's conduct violated DR 9-102(A)(2) (failing to maintain identifiable bank accounts for client funds), 9-102(B)(3) (failing to maintain complete records of all funds of a client coming into lawyer's possession and to render appropriate accounts to client regarding them), and 9-102(B)(4) (failing to promptly refund unearned fees to client upon request). With respect to the Zimmerman matter, the panel concluded that respondent's conduct violated DR 6-101(A)(3) (neglecting an entrusted legal matter), 7-101(A)(2) (failing to carry out a contract of employment), 9-102(A)(2), 9-102(B)(3), 9-102(B)(4), and Gov.Bar R. V(4)(G) (failing to cooperate with a disciplinary investigation). In the Ward matter, the panel concluded that respondent's conduct violated DR 6-101(A)(3), 7-101(A)(2), and 9-102(B)(4).

{¶ 8} In mitigation, the panel found that neither Stanek nor his father appeared at the disciplinary hearing and that Stanek's father, who had paid his son's fees, never requested a refund. Respondent testified that he had been reluctant to make restitution to these clients because he believed that it was inappropriate once the grievances had been filed. After the panel hearing, respondent refunded $1,500 to Zimmerman and $2,500 to Stanek's father. Respondent further testified that during the period of his misconduct, he purchased an expensive house with the proceeds from a medical malpractice case involving his wife, and that in trying to maintain his family's heightened standard of living, he took on more cases than he could competently handle. He also admitted that he lacked proper office management skills. Respondent was remorseful about his misconduct, and he said

that he had reduced his practice to a few cases and had revised his office management practices.

{¶ 9} The panel recommended that respondent be suspended from the practice of law in Ohio for one year with six months of the suspension stayed on the condition that he take continuing legal education courses in office management. The board adopted the findings, conclusions, and recommendation of the panel.

———————————

*Becker & Mishkind Co., L.P.A.,* and *Howard D. Mishkind; Kohrman, Jackson & Krantz* and *Ari H. Jaffe; Weston, Hurd, Fallon, Paisley & Howley, L.L.P.,* and *Christopher M. Ernst*, for relator.

*N. Stephen Nigolian, pro se*, and *Mary L. Cibella*, for respondent.

———————————

*Per Curiam.*

{¶ 10} We adopt the findings, conclusions, and recommendation of the board. Given respondent's restitution, remorse, and ultimate cooperation in the proceedings, a definite suspension from the practice of law is an appropriate sanction for his misconduct. See *Cuyahoga Cty. Bar Assn. v. Caywood* (1991), 62 Ohio St.3d 185, 580 N.E.2d 1076. Respondent is hereby suspended from the practice of law in Ohio for one year, with six months stayed on the condition that during the first six months of the suspension, he take six hours of continuing legal education courses in law office management. Costs taxed to respondent.[1]

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., dissent.

———————————

**LUNDBERG STRATTON, J., dissenting.**

———————————

1. We deny grievant Stanek's motion for leave to file objections to the board's report.

**{¶ 11}** I dissent and would suspend respondent from the practice of law for one year.

Cook, J., concurs in the foregoing dissenting opinion.

_____