CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* POLKE.

IN RE REINSTATEMENT OF POLKE.

[Cite as *Cleveland Metro. Bar Assn. v. Polke,* 135 Ohio St.3d 121, 2012-Ohio-5852.]

*Attorney misconduct—Multiple violations of the Disciplinary Rules—Suspension stayed on conditions.*

(Nos. 2008-1708 and 2012-0296—Submitted April 24, 2012—Decided December 12, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 06-031.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Dennis J. Polke of Euclid, Ohio, Attorney Registration No. 0030896, was admitted to the practice of law in Ohio in 1981. In April 2006, relator, Cleveland Metropolitan Bar Association, charged Polke with professional misconduct arising from his acceptance of money from clients and failure to perform the contracted legal work. In September of that year, relator amended its complaint to allege that Polke had engaged in professional misconduct in his representation of two additional clients, that he was suffering from a mental illness that might have contributed to his misconduct, and that relator had reason to believe that his mental condition impaired his ability to continue practicing law.

**{¶ 2}** A panel of the Board of Commissioners on Grievances and Discipline assigned to hear the matter ordered Polke to submit to a psychiatric examination pursuant to Gov.Bar R. V(7)(C). Based on the evidence demonstrating that Polke suffered from a mental illness that substantially

impaired his ability to practice law, the recommendation of the panel and the full board, and the board's certification of the complaint pursuant to Gov.Bar R. V(7)(B)(2) and (D), this court issued an order suspending Polke from the practice of law.

{¶ 3}   This matter is now before the court on the board's certification that the cause for Polke's mental-health suspension has been removed and upon the parties' stipulations and the board's findings of fact and misconduct with regard to the underlying disciplinary complaint.   Based on the reports submitted by Polke, the independent mental-health evaluation completed at the board's request, and relator's acknowledgement that Polke is no longer mentally ill, the board recommends that Polke's mental-illness suspension be terminated, pursuant to Gov.Bar R. V(7)(F).   But finding that as of the date of the panel hearing on the matter, Polke had not complied with the additional requirements set forth in the suspension order, the board stops short of recommending that Polke be permitted to resume the practice of law.

{¶ 4}   With regard to the underlying disciplinary complaint, the board adopted the parties' stipulations of fact and found that Polke neglected and intentionally failed to carry out contracts of employment in six client matters, failed to promptly deliver funds to which the client was entitled in four of those matters, and engaged in conduct prejudicial to the administration of justice in two of those matters.  Based on these findings, the board recommends that we suspend Polke's license to practice law for one year, with the entire suspension stayed on conditions.

{¶ 5}   For the reasons that follow, we adopt the board's recommendation to terminate Polke's mental-illness suspension and adopt the parties' stipulated findings of fact and misconduct. We also impose a one-year suspension of Polke's license to practice law, with the entire suspension stayed on conditions.

2

**Termination of the Mental-Health Suspension**

{¶ 6} In our January 22, 2009 mental-health suspension order, we not only found that Polke suffered from a mental illness that substantially impaired his ability to practice law, but we also (1) taxed the cost of the proceedings to Polke and ordered him to pay them within 90 days of the order, adding that any amount unpaid after 90 days would accrue interest at the rate of 10 percent per annum, (2) ordered him to complete one credit hour of continuing legal education ("CLE") for each month, or portion of a month, of his suspension, including one credit hour of instruction related to professional conduct required by Gov.Bar R. X(3)(A)(1), for each six months, or portion of six months, of the suspension, and (3) ordered him to reimburse any amounts awarded against him by the Clients' Security Fund within 90 days of the notice of that award.

{¶ 7} Polke applied to terminate his mental-health suspension pursuant to Gov.Bar R. V(7)(F) in October 2010, alleging that the condition or conditions that caused his suspension had been removed. Attached to his application were reports from the licensed independent social worker counseling Polke, his treating psychiatrist, and a psychologist who had evaluated him.

{¶ 8} Pursuant to the panel's order, Polke submitted to a psychiatric evaluation, which found that he exhibited no signs or symptoms of mental illness, but expressed some reservations about Polke's ability to safely resume the practice of law without a support system to help him establish himself in the legal community.

{¶ 9} Relator concedes that the cause for Polke's mental-health suspension has been removed. However, relator contends that Polke's application to terminate his mental-health suspension should be denied because he has not fully complied with the conditions imposed in that suspension order. Specifically, relator notes that Polke has not yet paid the costs of the proceeding, reimbursed

the Clients' Security Fund for payments made to his former clients, or completed the CLE obligation imposed in our order.

{¶ 10} Relator acknowledges that on June 16, 2010, Polke filed a Chapter 7 notice of discharge from the United States Bankruptcy Court, Northern District of Ohio, in this case. *See In re Polke*, No. 10-11391 (Bankr.N.D.Ohio 2000) Relator argues, however, that pursuant to 11 U.S.C. 523(a)(7) and *In re Bertsche*, 261 B.R. 436, 437 (Bankr.S.D.Ohio 2000), his debts to this court are nondischargeable because disciplinary proceedings are similar to criminal proceedings and serve to protect the public. On the other hand, Polke contends that *Bertsche* is not applicable to this case, because it emanates from the United States Bankruptcy Court for the Southern District of Ohio, Western Division, while his bankruptcy issues from the Northern District of Ohio, Eastern Division. He further asserts that the bankruptcy court possesses original and exclusive jurisdiction over all cases under Title 11 of the United States Code and that the time for determining the dischargeability of his obligations to this court has expired. Polke also contends that the CLE obligation we have imposed—and his professed inability to finance such courses—should not be a "punishment" or "stumbling block" preventing his reentry into the profession, but should be a tool to guide him as he reenters the profession.

{¶ 11} Although Polke has not complied with the financial or CLE aspects of his mental-health suspension order, it is not now necessary for us to decide the effect of his bankruptcy proceeding on his financial obligations to this court under his mental-health suspension order. This is true because Gov.Bar R. V(7)(F) provides that a mental-health suspension "may be terminated on application of the respondent to the Board and a showing of removal of the cause for the suspension," and Polke has sustained his burden of proof in that regard.

{¶ 12} Therefore, we affirm the board's determination that Polke's mental-health suspension should be terminated. But that does not mean that Polke is currently eligible to be reinstated to the practice of law.

{¶ 13} In addition to the remaining conditions of reinstatement imposed in Polke's mental-health suspension order, we note that on June 16, 2008, we suspended Polke from the practice of law for his failure to comply with the CLE requirements of Gov.Bar R. X. *In re Continuing Legal Edn. Suspension of Polke*, 118 Ohio St.3d 1447, 2008-Ohio-2889, 888 N.E.2d 1101. The CLE requirements imposed in Polke's mental-health suspension order mirror the requirements of his CLE suspension, which remains in effect. Polke has not petitioned us to terminate that order and cites no legal authority to support his request that this court waive the CLE conditions imposed in either his mental-health or CLE-suspension orders based on his claims of penury. And he testified that the Commission on Continuing Legal Education denied his request for an exemption from his CLE obligations pursuant to Gov.Bar R. X(3)(F)(1)(b) (authorizing the Commission on Continuing Legal Education to approve exemptions from the CLE requirements of Gov.Bar R. X(3)(A) for an attorney suffering from severe, prolonged illness or disability that prevents participation in accredited programs and activities for the duration of the illness or disability). Therefore, we decline to waive those requirements at this time.

### The Underlying Disciplinary Complaint
### Findings of Fact and Misconduct

{¶ 14} In its amended complaint, relator charged Polke with six counts of misconduct for accepting retainers from six clients and failing to complete the legal services he agreed to provide, failing to refund the unearned portion of his fee in four of those cases, and engaging in conduct prejudicial to the administration of justice by failing to appear at scheduled court proceedings in two of the matters involving criminal charges against his clients. Three of the

affected clients received awards from the Clients' Security Fund: Gwenda Long, who retained Polke to represent her son in a criminal matter, received an award of $8,800 on September 4, 2009; Kevin Grimes received an award of $1,000 on September 4, 2009; and Juliana Morton received an award of $1,000 on April 22, 2010—though Polke disputes the necessity for these awards. And one of Polke's colleagues refunded $500 to client Danielle Gavorski on Polke's behalf.

{¶ 15} Based upon the stipulated facts, the parties stipulate, the board has found, and we agree that Polke has committed six violations of DR 6-101(A)(3) (prohibiting neglect of an entrusted legal matter) and 7-101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of employment for legal services),[1] four violations of 9-102(B)(4) (requiring a lawyer to promptly pay or deliver funds and property to which a client is entitled), and two violations of 1-102(A)(5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

### Sanction

{¶ 16} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 17} As aggravating factors, the parties stipulate and the board has found that Polke has a prior attorney-registration suspension, has engaged in a

---

1. With respect to Count I, the amended complaint alleges and the parties stipulate that Polke intentionally failed to carry out a contract of employment for legal services with respect to Count I, but erroneously refer to this as a violation of DR 7-101(A)(1). And with respect to Count VI, the amended complaint alleges that Polke intentionally failed to carry out a contract of employment for legal services, but erroneously refers to this as a violation of DR 7-101(B)(3). The parties, however, correctly stipulate that Polke's conduct violates DR 7-101(A)(2).

pattern of misconduct involving multiple offenses, and has failed to make restitution. *See* BCGD Proc.Reg. 10(B)(1)(a), (c), (d), and (i); *In re Atty. Registration Suspension of Polke*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671; and *In re Atty. Registration Reinstatement of Polke,* 108 Ohio St.3d 1428, 2006-Ohio-378, 841 N.E.2d 790. Mitigating factors present include the absence of a dishonest or selfish motive, the absence of other certified complaints, and Polke's diagnosed mental disability. *See* BCGD Proc.Reg. 10(B)(2)(a), (b), and (g).

{¶ 18} Based upon the aggravating and mitigating factors present, and the duration of Polke's mental-health suspension, the parties propose that Polke not receive any additional sanction for his admitted misconduct. Despite the fact that Polke's diagnosed mental-health condition contributed to the misconduct for which he now faces discipline, the board rejected the parties' notion that "time served" under his mental-health suspension will suffice. The board noted that in addition to an attorney's misconduct, the duties violated, the injuries caused, and the attorney's mental state, the sanctions imposed in similar cases and all other relevant factors should be considered in determining the appropriate sanction for professional misconduct.

{¶ 19} Comparing Polke's conduct to that of the attorney in *Disciplinary Counsel v. Pfundstein*, 128 Ohio St.3d 61, 2010-Ohio-6150, 941 N.E.2d 1180, the board recommends that we suspend Polke from the practice of law for one year, but stay the entire suspension once he meets the following conditions: (1) comply with any CLE requirements imposed by this court, (2) pay the costs of these proceedings, (3) reimburse the Clients' Security Fund for all awards made to the clients affected by his misconduct, (4) enter into a contract with the Ohio Lawyers Assistance Program ("OLAP") and abide by all treatment recommendations and requirements established by OLAP, and (5) engage in no further misconduct.

**{¶ 20}** In representing a single client in the collection of a legal-malpractice judgment and litigation of an employment-discrimination claim against the client's former employer, Pfundstein failed to act with reasonable diligence and promptness, failed to keep his client reasonably informed of the status of the matters, and failed to respond promptly to his client's reasonable requests for information, and he thereby engaged in conduct adversely reflecting on his fitness to practice. *Id.* at ¶ 6-13. The only aggravating factors present were that Pfundstein had engaged in a pattern of misconduct and had committed multiple offenses. *Id.* at ¶ 15. *See also* BCGD Proc.Reg. 10(B)(1)(c) and (d). Mitigating factors, however, included the absence of a prior disciplinary record, Pfundstein's cooperative attitude and expressions of remorse during the disciplinary proceedings, and evidence of his good character and reputation apart from the charged misconduct, as demonstrated by over 20 letters attesting to his good character, reputation, and community service during his 18 years of practice. *Id.* at ¶ 16. *See* BCGD Proc.Reg. 10(B)(2)(a), (d), and (e). Like Polke, Pfundstein had also been diagnosed with a mental illness that contributed to cause his misconduct. Pfundstein had undergone a sustained period of successful treatment and was capable of returning to the competent, ethical professional practice of law. BCGD Proc.Reg. 10(B)(2)(g).

**{¶ 21}** In *Pfundstein*, we imposed a one-year suspension and stayed it on the conditions that Pfundstein (1) remain in compliance with his OLAP contract, (2) comply with the treatment recommended by OLAP and his treating psychologist, (3) serve a period of monitored probation pursuant to Gov.Bar R. V(9) for the duration of his three-year OLAP contract, and (4) pay the costs of the disciplinary proceedings. Although Polke's conduct is not identical to that of Pfundstein, it is sufficiently similar that we find our disposition in *Pfundstein* to be instructive.

**{¶ 22}** Accordingly, we suspend Dennis J. Polke from the practice of law for one year, with the entire suspension stayed upon his satisfying the following conditions: (1) rectify any existing CLE deficiency and maintain compliance with all Gov.Bar R. X requirements, including those ordered by the court on January 22, 2009, (2) reimburse the Clients' Security Fund for all awards made to the clients affected by his misconduct herein or obtain a determination of dischargeability from the appropriate bankruptcy court, (3) enter into an OLAP contract for a duration to be determined by OLAP and comply with all treatment recommendations, (4) serve a one-year period of monitored probation in accordance with Gov.Bar R. V(9), (5) pay the costs associated with his mental-health suspension as ordered by this court on January 22, 2009, or obtain a determination of dischargeability from the appropriate bankruptcy court, and (6) commit no further misconduct. If Polke fails to comply with the terms of the stay, the stay will be revoked, and he will serve the full one-year suspension. Costs are taxed to Polke.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

KENNEDY, J., not participating.

_____

Shapero & Green, L.L.C., Brian Green, and Michael Shapero, for relator.

Dennis J. Polke, pro se.

_____