CINCINNATI BAR ASSOCIATION *v.* LAWRENCE.

[Cite as *Cincinnati Bar Assn. v. Lawrence,* 137 Ohio St.3d 299,

2013-Ohio-4735.]

*Attorneys—Misconduct—Mental-health suspension terminated—Evidence demonstrates that cause for suspension has been removed—Showing that suspension should be terminated does not establish eligibility for reinstatement to practice of law—Review of underlying disciplinary complaint demonstrates multiple violations of Disciplinary Rules—One-year suspension imposed, with reinstatement upon conditions.*

(Nos. 2004-1797 and 2013-0236—Submitted April 10, 2013—Decided

October 31, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 04-005.

_____

**Per Curiam**.

{¶ 1} Respondent, Joy Lawrence of Cincinnati, Ohio, Attorney Registration No. 0030638, was admitted to the practice of law in Ohio in 1985. In February 2004, relator, Cincinnati Bar Association, charged Lawrence with professional misconduct regarding two clients, arising from her failure to maintain complete records of the client funds in her possession, withdrawal of unearned fees from her client trust account, failure to perform contracted legal work, and failure to cooperate in the resulting disciplinary investigation. A probable-cause panel of the Board of Commissioners on Grievances and Discipline certified relator's complaint to the board. In June 2004, relator amended the complaint to add similar allegations of misconduct involving a third client.

**{¶ 2}** We imposed a mental-health suspension pursuant to Gov.Bar R. V(7) in January 2005, based on evidence that Lawrence suffered from "a disorder of thought, perception, orientation and memory, which grossly impair[ed] her ability to meet the ordinary demands of life" and substantially impaired her ability to practice law following an August 2002 surgery that left her with significant cognitive deficits.[1] The mental-health suspension effectively stayed the underlying disciplinary proceeding against Lawrence.

**{¶ 3}** This matter is now before the court on the board's certification that the cause for Lawrence's mental-health suspension has been removed and on the board's findings of fact, conclusions of law, and recommended sanction for the underlying misconduct. The panel and board recommend that we terminate Lawrence's mental-health suspension and find that she committed the charged misconduct. They offer differing recommendations, however, on the appropriate sanction for that misconduct. The panel recommends that Lawrence be indefinitely suspended from the practice of law, while the board recommends a one-year suspension with certain conditions on her reinstatement.

**{¶ 4}** For the reasons that follow, we adopt the board's findings of fact and conclusions of law. We further adopt the board's recommendation to terminate Lawrence's mental-illness suspension and to suspend her license for one year, with conditions on her reinstatement to the practice of law.

### Termination of the mental-health suspension

**{¶ 5}** Lawrence applied to terminate her January 24, 2005 mental-health suspension in November 2011, alleging that the condition or conditions that caused her suspension had been removed. *See* Gov.Bar R. V(7)(F). In conjunction with her application, she submitted (1) an October 2011 report from

---

1. On April 15, 2005, we also imposed a $250 sanction on Lawrence for her failure to comply with the applicable continuing-legal-education provisions of Gov.Bar R. X for the 2002-2003 reporting period. *In re Report of Comm. on Continuing Legal Edn.,* 105 Ohio St.3d 1503, 2005-Ohio-1739, 825 N.E.2d 1115. It does not appear that the sanction has been satisfied.

Lawson Wulsin, M.D., Professor of Psychiatry and Family Medicine, who evaluated her and stated with "reasonable medical certainty" that Lawrence is "fully rehabilitated and has no cognitive impairment or other mental condition, which might interfere with or prevent her from resuming the competent, ethical[,] professional practice of law," (2) an affidavit from Special Counsel for the Ohio Attorney General's office stating that Lawrence had paid Supreme Court of Ohio Account No. 8886079 in full, and (3) a report from the Commission on Continuing Legal Education, reflecting her continuing-legal-education ("CLE") attendance since 2002.

{¶ 6} Lawrence later submitted a report from her treating psychologist, Michael Lichstein, Ph.D., who expressed his professional opinion that Lawrence "is now fully capable of resuming her work as an attorney without any restrictions." Douglas Beech, M.D., the psychiatrist retained by the board to perform an independent medical evaluation reported that Lawrence's condition has improved substantially, that she has taken measures to support her ability to practice law in a safe and responsible manner, that her treatment has been appropriate and should continue, and that he is not aware of any psychiatric problem that would prevent her from being mentally fit to practice law. The panel found that this medical evidence proved that Lawrence is no longer mentally ill as defined in R.C. 5122.01(A) and, therefore, recommended that her mental-health suspension be terminated. While the panel found her competent to represent herself in the pending disciplinary matter, it ultimately determined that she is not presently competent to practice law.

{¶ 7} The board adopted the panel's findings of fact and certified to this court its conclusion that Lawrence is no longer mentally ill as defined in R.C. 5122.01(A). Because Gov.Bar R. V(7)(F) requires only "a showing of removal of the cause for the suspension," we affirm this certification and terminate Lawrence's mental-health suspension. Lawrence is not currently eligible for

reinstatement to the practice of law, however, because she has not demonstrated full compliance with the terms of our suspension order, she has not fully complied with the CLE requirements of Gov.Bar R. X(3)(G), and relator's underlying disciplinary complaint remains pending against her. *See, e.g.*, *Cleveland Metro. Bar Assn. v. Polke*, 135 Ohio St.3d 121, 2012-Ohio-5852, 984 N.E.2d 1045, ¶ 12-13.

**{¶ 8}** We now consider the board's findings of fact, conclusions of law, and recommended sanction with regard to the underlying disciplinary complaint.

### Misconduct

**{¶ 9}** The parties entered into stipulations of fact and misconduct in which Lawrence admitted some, but not all, of the facts alleged in the complaint. On many of the specific details, Lawrence stated that she "does not deny" their accuracy, although she had no independent recollection of them. However, she admitted that she committed all of the charged misconduct. The pertinent stipulated facts and violations are summarized as follows.

### *The Points Matter*

**{¶ 10}** In February 2002, Carol Points gave Lawrence a $7,500 retainer to handle a postdecree child-custody matter and, in a written fee agreement, agreed to pay $250 per hour for those services. Lawrence did not provide statements accounting for her fees, even when Points requested one to ascertain the status of her retainer more than a year into the representation. Points terminated the relationship and filed a grievance with relator. In July 2003, Lawrence provided a final billing statement reflecting that she was entitled to an additional $5,531 for her services, though she did not attempt to collect these funds.

**{¶ 11}** Although Lawrence failed to provide documentation requested by relator's investigators, the bank record that relator obtained by subpoena showed that she withdrew $4,000 from her client trust account on March 25, 2002. She had not yet earned the full amount of that withdrawal. Lawrence claimed that the

withdrawal was the result of a mistake or a mathematical error, but was unable to explain how it occurred. She does not dispute that her withdrawal of unearned fees predated her August 2002 surgery and resulting cognitive impairments.

**{¶ 12}** The parties stipulated and the board found that this conduct violated DR 9-102(A)[2] (requiring a lawyer to preserve the identity of client funds), 9-102(B)(3) (requiring a lawyer to maintain complete records of all client property coming into the lawyer's possession and render appropriate accounts to each client), the oath of office that she took on her admission to the bar as set forth in former Gov.Bar R. I(8)(A), found at 11 Ohio St.3d xxvi, effective May 7, 1984 (requiring an attorney to abide by the Code of Professional Responsibility and discharge the duties of attorney and counselor as an officer of the courts with fidelity to the court and the cause entrusted to the attorney), and Gov.Bar R. V(4)(G) (prohibiting a lawyer from neglecting or refusing to assist in a disciplinary investigation).

### The Parks Matter

**{¶ 13}** In September 2002, Linda Parks retained Lawrence to terminate her marriage. Lawrence estimated that her fee would be $1,800 for a dissolution and $2,500 for a divorce. Parks paid the $2,500 divorce retainer, but later directed Lawrence to draft dissolution documents. Although Lawrence timely prepared the documents and had the parties execute them, she failed to file them within 45 days as she had promised and did not respond to Parks's repeated attempts to contact her. And when she finally filed the documents, she did not submit the required shared-parenting plan or qualified-domestic-relations order. Nor did she advise Parks that she had filed the dissolution or inform her of the scheduled hearing date. She also failed to respond to Parks's request for an

---

2. Relator charged respondent under the applicable rules of the former Code of Professional Responsibility because her misconduct occurred before the adoption of the Rules of Professional Conduct on February 1, 2007.

accounting of her time and fees and to the relator's investigation of the resulting grievance.

{¶ 14} The parties stipulated and the board found that this conduct violated DR 2-106(A) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), 6-101(A)(3) (prohibiting neglect of an entrusted legal matter), 7-101(A)(1) (prohibiting a lawyer from intentionally failing to seek the lawful objectives of his client), 7-101(A)(2) (prohibiting a lawyer from intentionally failing to carry out a contract of employment for legal services), 7-101(A)(3) (prohibiting a lawyer from intentionally prejudicing or damaging a client during the course of the professional relationship), 9-102(B)(3), and 9-102(B)(4) (requiring a lawyer to promptly pay or deliver funds that a client is entitled to receive), her oath of office, and Gov.Bar R. V(4)(G).

### *The Dyke Matter*

{¶ 15} David E. Dyke retained Lawrence in October 2002 to represent him in his divorce. He paid a $2,500 retainer and agreed to pay $250 per hour for her services. Lawrence filed Dyke's divorce complaint, but she did not provide him with a copy and failed to respond to his requests for information. In August 2003, the domestic relations court issued a show-cause order to determine why the case should not be dismissed for lack of prosecution. Lawrence did not respond to that order or attend the hearing, and Dyke was not present because she had given him the wrong date for the hearing. Dyke terminated the representation and requested an accounting of his retainer and a refund of any unearned fees, which Lawrence failed to provide. Once again, she failed to provide documents requested by relator as part of its investigation.

{¶ 16} The parties stipulated and the board found that this conduct violated DR 6-101(A)(3), 7-101(A)(1), 7-101(A)(2), 7-101(A)(3), 9-102(B)(3), and 9-102(B)(4), her oath of office, and Gov.Bar R. V(4)(G).

**{¶ 17}** We adopt the board's findings of fact and misconduct with respect to each of these three counts.

### Sanction

**{¶ 18}** The parties did not agree on an appropriate sanction. Relator recommends an 18-month suspension, stayed on the conditions that Lawrence complete 18 months of monitored probation and enter into an Ohio Lawyers Assistance Program ("OLAP") contract. Lawrence has not suggested any specific sanction for her misconduct, but has expressed her intent to comply with the sanction and any conditions imposed.

**{¶ 19}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 20}** The panel found that several mitigating factors were present, namely, that Lawrence made full restitution to Parks and Dyke and did not seek to recover the balance of fees owed by Points. *See* BCGD Proc.Reg. 10(B)(2)(c). It noted that she did not act with a selfish motive and that she was generally cooperative in the most recent proceedings, with the exception of her refusal to produce medical records—an issue that relator apparently elected not to pursue. The panel also found that Lawrence had already served a seven-year license suspension and that the various medical reports jointly submitted by the parties found no impediment to her practice of law. *See* BCGD Proc.Reg. 10(B)(2)(b) and (c).

**{¶ 21}** Lawrence submitted three letters of reference attesting to her integrity and fitness to practice. *See* BCGD Proc.Reg. 10(B)(2)(e). The first was

from a special agent who came to know Lawrence when she reported Medicaid fraud to the Ohio Attorney General. The agent stated that Lawrence had personally reviewed thousands of documents, drawn reasonable conclusions from them, exposed critical facts, and served an indispensable role in the investigation. The second was from a Connecticut attorney who had enlisted Lawrence's help in understanding Ohio probate law. The attorney reported that Lawrence's assistance was invaluable and praised her knowledge of the relevant Ohio law. In the third letter, attorney William J. Reynolds reported that he had had both personal and professional dealings with Lawrence and found her to have an extremely acute analytical ability that was enhanced by her ethical and moral standards. He stated that he would not hesitate to practice law with her or retain her to represent him personally.

{¶ 22} We also find that Lawrence does not have any prior discipline, s*ee* BCGD Proc.Reg. 10(B)(2)(a), and that she entered into a two-year mental-health contract with OLAP in July 2012.

{¶ 23} The panel did not find any of the aggravating factors enumerated in BCGD Proc.Reg. 10(B)(1), though we note that Lawrence did commit multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(d).

{¶ 24} The panel acknowledged the three medical reports stating that Lawrence is no longer mentally ill and detailing her successful efforts to rehabilitate herself after suffering a brain injury that left her with significant cognitive deficits. The panel also acknowledged her many positive achievements during her suspension, including her efforts to stay current in her chosen areas of practice by obtaining certification as an Ohio guardian ad litem, obtaining guardianship certification from the National Guardianship Association, and completing multiple mediation training sessions through this court, her design and execution of a CLE seminar to educate members of the bar about the effects of depression and anxiety in the legal profession, her grass-roots campaign to reform

guardianship practices for adults in Ohio with intellectual and developmental disabilities, and her assistance to the Ohio Attorney General's Medicaid Fraud Control Unit in an investigation initiated as the result of a complaint she had filed.

**{¶ 25}** But, citing differences between Lawrence's testimony at the August 2012 hearing and the letters and reports submitted by her character references and treating professionals—none of whom testified at the hearing—and noting several missteps in her handling of her own disciplinary case, the panel concluded that she is not presently competent to return to the practice of law. Therefore, the panel recommended that we deny Lawrence's application for reinstatement and indefinitely suspend her from the practice of law.

**{¶ 26}** Although the board adopted the panel's findings with regard to aggravation and mitigation, it recommends that we suspend Lawrence from the practice of law for one year and condition her reinstatement on compliance with the rigorous petition requirements of Gov.Bar R. V(10)(B) through (G). As part of the petition process, the board would require Lawrence to submit evidence that she has completed a current mental-health assessment, that a qualified health-care professional has found that she is able to return to the competent, ethical, and professional practice of law, and that she has entered into and is in compliance with an OLAP contract. Once reinstated, the board would also require Lawrence to serve two years of monitored probation. In support of that sanction, the board cited *Cleveland Metro. Bar Assn. v. Polke*, 135 Ohio St.3d 121, 2012-Ohio-5852, 984 N.E.2d 1045. In *Polke*, we terminated a mental-health suspension and imposed a one-year stayed suspension for the attorney's underlying misconduct, which included two violations of DR 1-102(A)(5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), six violations of DR 6-101(A)(3) and 7-101(A)(2), and four violations of DR 9-102(B)(4). *Id.* at ¶ 12, 15, 22.

{¶ 27} In *Cuyahoga Cty. Bar Assn. v. Nigolian*, 87 Ohio St.3d 147, 718 N.E.2d 417 (1999), we considered misconduct similar to Lawrence's. Nigolian failed to provide one client with statements for services rendered, failed to account for the use of the client's $10,000 retainer, and failed to maintain identifiable records of the funds held on deposit for the client. *Id.* at 148. He also deposited another client's $1,500 retainer into his personal account, prepared documents in the client's case but failed to file them, failed to appear at a scheduled hearing, and failed to prepare and submit a journal entry as ordered by the court. *Id.* We found that the attorney's conduct violated DR 6-101(A)(3), 7-101(A)(2), 9-102(A)(2) (requiring funds belonging in part to a client and in part presently or potentially to a lawyer to be deposited in a client trust account and permitting the lawyer to withdraw the undisputed portion belonging to him or her), 9-102(B)(3), and 9-102(B)(4), and Gov.Bar R. V(4)(G). *Id*. at 149. For those infractions, we imposed a one-year suspension with six months stayed on the condition that Nigolian take six hours of CLE courses in law-office management. *Id.* at 149-150.

{¶ 28} In addition to committing violations comparable to those at issue in *Polke* and *Nigolian*, Lawrence also charged a clearly excessive fee and intentionally prejudiced or damaged those clients during the course of her representation. But more significantly, she withdrew unearned funds from her client trust account before they were fully earned, and this conduct occurred *before* she suffered her brain injury.

{¶ 29} On these facts, we find that the board's recommended sanction of a one-year actual suspension from the practice of law is appropriate. Moreover, the recommended conditions on Lawrence's reinstatement will give relator, the board, and this court the opportunity to address any lingering concerns about Lawrence's ability to resume the competent, ethical, and professional practice of law.

**{¶ 30}** Accordingly, we suspend Lawrence from the practice of law for one year. In the event that she seeks to return to practice, she shall be required to petition this court for reinstatement, and in addition to all of the requirements of Gov.Bar R. V(10)(B) through (G), she shall be required to submit documentation that (1) she has completed a current mental-health assessment performed by a qualified health-care professional, (2) a qualified health-care professional has found her capable of returning to the competent, ethical, and professional practice of law, and (3) she has entered into an OLAP contract for a duration to be determined by OLAP and complied with all treatment recommendations. On reinstatement, Lawrence will serve a two-year period of monitored probation in accordance with Gov.Bar R. V(9). Costs are taxed to Lawrence.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Edwin W. Patterson III, Bar Counsel, Anita S. Cross, and Beth Silverman, for relator.

Joy Lawrence, pro se.

_____